1. LICENSES—ORDINANCE HELD NOT TO EXCEED POWERS DELEGATED UNDER CHARTER.

An ordinance exacting a quarterly license fee from one vending goods at retail from a railroad freight car *held* authorized by Reno charter act, art. 12, sec. 10c, subd. 4, as amended by Stats. 1923, c. 77.

2. LICENSES—ORDINANCE EXACTING A LICENSE FEE FOR PEDDLING HELD NOT UNREASONABLE.

Under Reno charter as amended by Stats. 1923, c. 77, authorizing license tax in proportion to the approximate amount of business done by licensee, an ordinance exacting a quarterly license fee from one vending goods at retail from a railroad freight car could not be deemed unreasonable, prohibitive, and confiscatory, as long as it was uniform in proportion to the approximate amount of business done by licensee, though the fee approximated 10 per cent of the gross returns of licensee.

3. CONSTITUTIONAL LAW—DEFENDANT CANNOT OBJECT TO CONSTITUTIONALITY OF PROVISIONS OF ORDINANCE NOT AFFECTING HIM.

One convicted of peddling from a box car without license, contrary to city ordinance, could not object to constitutionality of provisions of ordinance not affecting him.

4. CONSTITUTIONAL LAW—ONE NOT INJURED BY AN ORDINANCE CANNOT ATTACK ITS CONSTITUTIONALITY.

One not injured by an ordinance cannot attack its constitutionality.

5. CONSTITUTIONAL LAW—DEFENDANT NOT INJURED BY LACK OF UNIFORMITY IN ORDINANCE WHERE HE HAD NO LICENSE TO PEDDLE.

If an ordinance exacting quarterly license fees for peddling was discriminatory for lack of uniformity, defendant convicted for a violation thereof was not injured thereby, where he had no license and was not peddling any merchandise excluded from the regular schedule of license fees.

6. MUNICIPAL CORPORATIONS—REASONABLENESS OF PENALTY PRESCRIBED BY ORDINANCE HELD NOT OPEN TO INQUIRY.

The reasonableness of a penalty prescribed by an ordinance of the city of Reno for failure to pay the required license fees for peddling was not open to inquiry, where it was within the limitations of express authority granted by legislature, in view of Reno charter, sec. 10i, subd. 5, as amended by Stats. 1923, c. 77; Stats. 1905, c. 71, art. 14, sec. 3.

7. MUNICIPAL CORPORATIONS—AUTHORIZED ORDINANCE NOT UNREASONABLE.

An ordinance cannot be declared unreasonable which is expressly authorized by legislature.

8. LICENSES—COMPLAINT CHARGING VIOLATION OF ORDINANCE HELD SUFFICIENT WITHOUT CHARGING THAT "PEDDLING" FROM BOX CAR WAS AT RETAIL.

Complaint charging defendant with peddling from a railroad box car without procuring a license, in violation of an ordinance, was sufficient without alleging that it was at retail; "peddling" being sufficient to inform defendant that he was charged with selling and delivering at retail.

9. LICENSES—UNNECESSARY IN CHARGING VIOLATION OF ORDINANCE TO ALLEGE THAT RAILROAD BOX CAR WAS NOT A FIXED PLACE OF BUSINESS.

In a prosecution for peddling from a railroad box car without a license, in violation of an ordinance, it was unnecessary to allege that such car was not a fixed place of business, where by the terms of the ordinance a freight car was defined as not a fixed place of business.

10. LICENSES—USE OF TERM "RAILROAD BOX CAR" INSTEAD OF "FREIGHT CAR" IN CHARGING VIOLATION OF ORDINANCE HELD NOT MISLEADING.

In a prosecution for peddling from a railroad box car without a license, in violation of an ordinance, use of the term "railroad box car" in the complaint, instead of "freight car," as employed in the ordinance, was not misleading.

See (1, 2, 8, 9, 10) 37 C. J. sec. 13, p. 174, n. 95; sec. 16, p. 176, n. 27; sec. 20, p. 179, n. 60; sec. 22, p. 181, n. 84, 85; sec. 41, p. 190, n. 37; sec. 42, p. 192, n. 51; sec. 77, p. 223, n. 52 (new); sec. 160, p. 268, n. 16; (3, 4, 5) 12 C. J. sec. 177, p. 760, n. 57; p. 764, n. 71; (6, 7) 28 Cyc. p. 282, n. 97; p. 723, n. 10; p. 764, n. 66; p. 766, n. 39; (8) 29 C. J. sec. 9, p. 227, n. 4, 8.

ORIGINAL PROCEEDING in the matter of the application for a writ of habeas corpus of and for John Noyd. **Writ dismissed. Rehearing denied.**

*John F. Kunz,* for Petitioner:

Ordinance is void because (1) it seeks to enlarge meaning of "hawker" or "peddler" to include one retailing from freight car, thereby exceeding power given by charter. Kennedy v. People, 49 Pac. 373; 1 Dillon Mun. Corp. sec. 89. (2) Tax imposed exceeds reasonable expense of issuing license and regulating occupation and is virtually prohibitory. 25 Cyc. 611; 21 R. C. L. 192. (3) Being based upon number of vehicles used and not upon volume of business done, tax is discriminatory and not uniform. Park City v. Daniels, 149 Pac. 1094; 2 McQuillin Mun. Corp. sec. 738. (4) Penalty for violation is exorbitant and unreasonable. 25 Cyc. 634; Carrollton v. Bazette, 42 N. E. 837. (5) City cannot enlarge ordinary definition of

"hawker" or "peddler." Complaint alleges sale from box car, which is not usually coupled with avocation of peddler. Fundamental rule of construction is that legislature must have intended to use words in commonly accepted signification. Sutherland Stat. Cons. 251.

Peddler or hawker is itinerant or traveling trader who takes goods about and actually sells and delivers them. Martin v. Rosedale, 29 N. E. 410; Village of Schibner v. Mohr, Ann. Cas. 1912D, 1289, 21 Cyc. 367.

Reasonableness of tax is usually for court, and not for jury. Municipalities cannot, generally, tax peddlers for revenue purposes. Burlington v. Unterkircher, 68 N. W. 795; O'Hara v. Collier, Ann. Cas. 1914D, 938. City cannot prohibit exercise of lawful trade by excessive license tax. People v. Hardis, 46 N. Y. S. 596; People v. Grant, 121 N. W. 300.

Complaint is insufficient because it does not allege peddling from railroad box car was "at retail." 21 R. C. L. 184.

*LeRoy F. Pike*, City Attorney, and *E. F. Lunsford*, of Counsel, for Respondent:

This court will not consider evidence upon petition for writ of habeas corpus. Ex Parte Dixon, 43 Nev. 196; Ex Parte Davis, 33 Nev. 309.

Charter grants practically unlimited powers for municipal purposes. Ordinance does not violate United States Constitution, Nevada Constitution, nor statutes.

Necessity for meeting expenses justifies taxing businesses. Fact that business in question was included in definition of hawker or peddler is immaterial. Ex Parte Siebenhauer, 14 Nev. 365.

Peddler's mode of conveyance is immaterial. The Stella Black v. Richland, 25 La. Ann. 642; Fisher v. Patterson, 13 Pa. St. 336; Gould v. Atlanta, 55 Ga. 678; 21 Cyc. 370.

Peddler and vendor of goods from box car are synonymous in Nevada law. 3 Rev. Laws, p. 3025.

City may fix license for revenue as well as for police

regulation, and may even suppress some businesses, such as peddling. San Jose v. R. R. Co. 53 Cal. 481; 1923 Stats. 125; Rapp. v. Kiel, 115 Pac. 651; R. R. Co. v. Hoboken, 41 N. J. L. 71.

Petitioner cannot complain that ordinance is discriminatory in regard to number of trucks used, as he is not affected thereby. Ex Parte Sloan, 47 Nev. 109.

Penalty is within limits of state act for same offense and is therefore not exorbitant. 3 Rev. Laws, p. 3024; 2 Rev. Laws, secs. 6285, 6808. Court can inquire into reasonableness of penalty only when limitation is not fixed by statute or charter. 2 McQuillin Mun. Corp. sec. 720; City of Tarkio v. Cook, 41 Am. St. 683.

## OPINION

By the Court, DUCKER, C. J.:

Petitioner was arrested, tried, and convicted in the municipal court of the city of Reno upon a complaint charging him with peddling from a railroad box car without procuring a license as provided in section 2 of an ordinance of said city. He was sentenced by the court to pay a fine of $300, and in default of the payment of the fine, or any part thereof, to be confined in the city jail of Reno for a period of not to exceed one day for each one dollar of said fine remaining unpaid but not to exceed six months' imprisonment. Petitioner was remanded to the custody of the chief of police of said city, and upon the issuance of the writ of habeas corpus from this court was admitted to bail pursuant to its order.

Section 1 of said ordinance reads:

"*Itinerant Hawkers and Peddlers*—For the purpose of this ordinance itinerant hawkers and peddlers are defined to be all persons traveling from house to house carrying meats, fruits, vegetables or other farm products, dry goods, furs, groceries, cigars, tobacco and other merchandise with them and selling and delivering the same at retail from a pack or truck, automobile, wagon, or other vehicle, and all persons selling and

delivering any of said goods at retail from motor trucks, wagons or other vehicles or freight cars or at any place not a fixed place of business in the city of Reno. A fixed place of business is defined to be a place of business located in a permanent structure in the city of Reno where merchandise is sold direct to the consumer."

Section 2 reads, in part:

"Any itinerant hawker or peddler or any person, firm, association or corporation, engaged in the business of hawking or peddling in the city of Reno, except as hereinafter provided, shall pay for and obtain a quarterly license to carry on such business as follows, to wit." (Next following in said section are the several license fees based upon quarterly gross receipts.)

1. Petitioner contends that the ordinance is unconstitutional for several reasons. His first contention is that section 1 seeks to enlarge the generally accepted meaning of the word or words "hawkers or peddlers" and by so doing exceeded the power to regulate the same delegated by the legislature to the city of Reno under its charter. We see no merit in the contention that power has been exceeded in this respect. The intention to exact a quarterly license from one selling and delivering any of the goods described in section 1 at retail from a freight car is expressed. The power to so legislate by ordinance is amply delegated by the fourth subdivision of section 10c, art. 12, of the charter act of the city of Reno, as amended by the legislature of 1923, page 122, 1923 Stats. Power is given the city council, among other things, in said subdivision, to fix, impose, and collect a license tax on and to regulate all character of lawful trades, callings, industries, occupations, professions, and business conducted in whole or in part within the city, including hawkers and peddlers, unless the latter are dealing in their own agricultural products of this state: and in the seventh subdivision of said section 10c:

"To provide for the issuance of all licenses in this charter authorized, and to fix the amount thereof and the time for, manner of, and terms upon which the same shall be issued."

The business of selling and delivering goods from a freight car is a lawful business, and the authority to require a license for conducting the same is therefore within the grant of power in said subdivision. The intention to exercise the power granted might have been expressed in some other way than by including it in a definition of hawkers and peddlers, but the method employed is of no importance. So it is unnecessary to determine whether the ordinance goes beyond the generally accepted meaning of those terms.

Our view is illustrated by the decision in Ex Parte Siebenhauer, 14 Nev. 365, 373. In that case it appears that the board of aldermen of Virginia City was authorized by statute "to fix and collect a license tax on and regulate" almost every kind of business or occupation that might be carried on within the city limits, including "merchants" and "solicitors." The ordinance adopted under that authority designated as a solicitor "every person or firm engaged in the business of soliciting the purchase of goods, wares or merchandise within the limits of the city of Virginia, to be sent to said city of Virginia from places beyond the limits of said city, or upon orders to be filled elsewhere than in said city, and every person, bargaining or selling any goods, wares or merchandise by sample or otherwise, in said city, where the same are to be sent to said city from beyond its limits."

The majority of the court said:

"It is unnecessary, in my opinion, for the purpose of deciding this case, to ascertain the meaning of the word 'solicitors,' as employed in the amended charter of Virginia City. It is admitted that the petitioner is a traveling merchant—that is, he keeps a stock of goods in San Francisco and comes to Virginia City for the purpose of soliciting orders. He carries on the business of selling goods in Virginia City, and he is none the less a merchant doing business there because he keeps his stock of goods in another state and travels about from place to place. The charter empowers the city of Virginia to impose a license tax upon merchants, and the class of persons described in the ordinance are

merchants. It is of no consequence that the ordinance calls them 'solicitors.' If the city has authority to tax them as merchants, it may call them by any name it pleases."

Under the view we take the cases cited and discussed by counsel for petitioner determining the extent of the meaning of the words "hawkers and peddlers" are not in point.

2. The next contention is that the amount imposed for obtaining a license is unreasonable, prohibitive, and confiscatory. As previously stated, the several amounts required by the ordinance for a license to carry on business are fixed by section 2 of the ordinance, the minimum as follows:

"Those whose quarterly gross receipts are less than three thousand ($3,000) dollars, the sum of three hundred ($300) dollars per quarter."

The maximum amount required is as follows:

"Those whose quarterly gross receipts are over fifty thousand ($50,000) dollars, the sum of $5,000 per quarter."

The charter of the city of Reno, as we have seen, empowers it to fix, impose, and collect a license tax on and regulate all characters of lawful business. It provides also that in fixing licenses the city council must as nearly as practicable make the same uniform in proportion to the approximate amount of business done by the licensee, and further provides that in fixing licenses the city council must have due regard for and be governed as far as possible by the "approximate amount or volume of business done by each person, firm, company or corporation thus licensed." These provisions make it clear that it was intended to give the city authorities power to license all kinds of business and occupations that might be carried on within the corporate limits of the city for the purpose of revenue. The intent to delegate this power may be inferred from the provisions of the charter requiring the license tax to be imposed with reference to the volume of business transacted. If it was intended to restrict the council's authority to granting licenses for carrying on the business and for police

regulation, the designation of the volume of business as a basis for a license tax would have been unnecessary. This provision and the use of the term "license tax" leaves no doubt of the nature of the power delegated. They clearly pertain to the taxing power of the state, and authorize an occupation tax. The term "license tax" has been held to refer to this power. City of Lamar v. Adams, 90 Mo. App. 35; San Jose v. S. J. & S. C. R. R. Co., 53 Cal. 475. In the latter case the court said:

"The charter of the city of San Jose, in defining the powers of the common council, authorizes it, amongst other things, 'to license and regulate all and every kind of business authorized by law, and transacted and carried on in said city, and to fix the rates of license tax upon said business.' In construing a similar power conferred upon the board of supervisors of the city and county of San Francisco, we said in Ex Parte Frank, 52 Cal. 606, 'when the power conferred upon the corporation, as in this case, is to "license and regulate" callings and occupations, a question has sometimes arisen in the courts, whether, under such a grant of power, the corporation could exact license fees for purposes of revenue, or should be limited to a sum reasonably sufficient to defray the expense of granting the license. (Dillon on Mun. Corp. 291.) But the rule as stated by Judge Dillon is, that in construing the words of the grant the whole charter and general legislation of the state respecting the subject-matter must be consulted in order to determine whether by the terms "license and regulate" it was intended to authorize licenses for purposes of revenue.' Tested by this rule, we held that the power to 'license and regulate' occupations in San Francisco included the power to raise revenue for municipal purposes by means of license fees; and the same rule of construction is applicable to the power conferred on the common council of San Jose. Indeed, the charter itself designates it as a 'license tax upon such business,' indicating clearly that it is a tax on the occupation, and not merely a license to carry on the business."

In that case it was said that the power of the legislature of the state, under the constitution, to tax

occupations and to authorize municipal corporations to tax them was settled.

The power of the legislature of our state, under the constitution, to tax a business or occupation is likewise settled (Ex Parte Robinson, 12 Nev. 263, 28 Am. Rep. 794; Ex Parte Dixon, 43 Nev. 196, 183 Pac. 642), and the authority to delegate it to municipal corporations cannot be questioned.

As the power delegated to the city of Reno includes the power to exact license fees as a source of revenue, it cannot be tested by the rules applicable to a municipal corporation clothed with power to license a business merely for the conduct thereof and police regulation. The authorities cited by counsel for petitioner have reference to the cities where the legislative grant was so restricted, or at least of doubtful intendment. On this subject Judge Cooley says:

"It is perhaps impossible to lay down any rule for the construction of such grants that shall be general, and at the same time safe; but, as all delegated powers to tax are to be closely scanned and strictly construed, it would seem that when a power to license is given the intendment must be that regulation is the object, unless there is something in the language of the grant, or in the circumstances under which it is made, indicating with sufficient certainty that the raising of revenue by means thereof was contemplated." Cooley Tax'n. (3d ed.) c. 19, p. 1139.

As we have seen, the legislative intent to delegate the power to tax clearly appears, and the authority to fix the amount thereof, and the time for, manner of, and term upon which a license shall be issued, given to the city in the charter act. The only limitations as to the amount are that the same must be uniform in proportion to the proximate amount of business done by the licensee; and in fixing the same, due regard must be paid to the approximate amount or volume of business done by the licensee. With these limitations the amount of the license tax is left to the legislative discretion of the municipal authorities. The ordinance is within the

extent of the grant as thus limited, which is as far as our inquiry can extend in a proceeding of this kind. City of St. Paul v. Colter, 12 Minn. 49 (Gil. 16), 90 Am. Dec. 278.

"The power to tax all of the property and business within this state," said the court in Ex Parte Robinson, supra, "is an essential attribute of its sovereignty, and there is no restraint upon its exercise when within constitutional limits, except the responsibility of the members of the legislature to their constituents."

While the license tax imposed seems to be large, we cannot say judicially, as a matter of law, that it violates any constitutional principle in this respect.

**3, 4.** Petitioner's third ground of objection is directed to that portion of section 2 of the ordinance which provides:

"That if any person, firm, association or corporation has more than one person engaged in the business of peddling, or uses more than one motor, motor truck, wagon or other vehicle in said business of peddling, the foregoing license shall be paid for each of said persons, motor trucks, wagons or vehicles used in said business, in accordance with the amount of business each person, motor truck or vehicle does, but not less than the minimum schedule."

The objection is that this provision is discriminatory and imposes a double tax. Petitioner is not in a position to urge this objection to the constitutionality of the ordinance. He was charged with and convicted of peddling from a railroad box car without a license. It does not appear that he had more than one person engaged in the business or used more than one vehicle, or any vehicle for the purpose. One who is not injured by an ordinance cannot attack its constitutionality. Ex Parte Sloan, 47 Nev. 109, 217 Pac. 233. He is in the same position as to his fourth objection, which is grounded upon that portion of section 2 of the ordinance which provides:

"That the foregoing license schedule shall not be charged any person engaged in the vending or peddling

of what are commonly known as ice cream cones, hot dogs, candies, tamales, nuts, Eskimo pies or like articles of food usually sold at carnivals or fairs, but that the following schedule shall be paid for the same."

Then follows the requirement of a license for such vending or peddling of $15 per quarter, and $30 per quarter, graduated upon quarterly gross receipts.

5. It is urged that in this respect section 2 is discriminatory, and that the license fees designated are not uniform upon the class upon which they are sought to be imposed. It appears that petitioner has no license, and it does not appear that he was vending or peddling any of the merchandise excluded from the regular schedule of license fees. He is therefore uninjured in this respect.

The next objection is that the ordinance is discriminatory in that it does not include those who walk from place to place and sell merchandise from a bag. This objection is untenable for the reason that that portion of section 1 of the ordinance which reads, "All persons traveling from house to house carrying meats, fruit, etc., with them and selling and delivering the same at retail from a pack,  *  *  * "  means that class of peddlers. That it means peddlers who travel on foot is obvious from the use of the phrase "selling and delivering the same from a pack."

6, 7. It is next contended that the penalty inflicted for the violation of the ordinance is exorbitant and unreasonable. The penalty that might be imposed for a violation of the ordinance is provided in the charter authorizing it. By the provisions of the charter fines, forfeitures, and penalties may be prescribed for the breach or violation of any ordinance, or the provisions of the charter, but no penalty shall exceed the amount of $500 or six months' imprisonment or both such fine and imprisonment. Subdivision 5 of section 10i, Stats. 1923, p. 130.

It is further provided that the payment of fines may be enforced by imprisonment in the city jail at the rate of one day for every one dollar of said fine remaining

unpaid. Section 3, art. 14, Stats. 1905, p. 132. Pursuant to such authority, section 9 of the ordinance provides that any one violating any of the provisions of the ordinance shall be deemed guilty of a misdemeanor and upon conviction shall be punished by a fine of not less than $300 and not exceeding the sum of $500, and in default of the payment of the fine, the court may order the defendant imprisoned in the city jail of the city of Reno one day for each dollar of said fine remaining unpaid. It is thus seen that the penalty imposed by the ordinance is within the limitations of express authority granted by the legislature. The reasonableness of the penalty is therefore not open to inquiry. An ordinance cannot be declared unreasonable which is expressly authorized by the legislature. Coal Float v. City of Jeffersonville, 112 Ind. 15–19, 13 N. E. 115. If it is expressly authorized by the legislature within constitutional limits and is unreasonable and oppressive, the remedy lies with the legislature or city council.

In the case of Haynes v. Cape May, 50 N. J. Law, 55–57, 13 Atl. 231, 232, the court said:

"There are circumstances under which the court will inquire into the reasonableness of ordinances passed by a municipal body under legislative powers granted to it. Those circumstances exist when the powers granted by the legislature are expressed in terms general and indefinite. But where the legislature has defined the delegated powers, and prescribed with precision the penalties that may be imposed, an ordinance within the powers granted, prescribing a penalty within the designated limit, cannot be set aside as unreasonable."

In City of Tarkio v. Cook, 120 Mo. 1, 25 S. W. 202, 41 Am. St. Rep. 678, cited by counsel for respondent, the principle is stated and applied. After quoting the language of the New Jersey case hereinbefore set out, the court said:

"An interference with the action of the city of Tarkio, in prescribing the penalty for the violation of this ordinance, would set at naught the authority of the legislature to delegate the power, and to prescribe the limit to

the penalties that might be imposed. If the authority had been granted in general terms to impose a fine without fixing its limit, the courts might inquire into the reasonableness of that fixed by the ordinance; but no such inquiry should be made where, as in this case, the maximum of the fine imposed is within the prescribed limits of the charter."

See 1 Dillon, Mun. Corp. sec. 328, and 2 McQuillin, Mun. Corp. sec. 720, for statement of this general principle.

Petitioner challenges the sufficiency of the complaint upon several grounds, namely: That it is not alleged therein that the peddling was from a railroad box car at retail; that it does not allege an offense against any ordinance of said city of Reno for the reason that no ordinance exists in said city of Reno making it an offense for a hawker or peddler to sell merchandise from a freight car. The last contention is disposed of adversely to petitioner by our ruling that the city council had power under the charter to and did adopt a valid ordinance requiring a license from one selling and delivering merchandise at retail from a freight car in the city of Reno, fixing a valid penalty for the violation of the provisions of the ordinance. That one may "peddle," in the usual acceptation of the word, by selling and delivering goods at retail from a freight car, is obvious.

8. As to the objection that the complaint does not state any offense under the ordinance, in that it fails to allege that the peddling from a box car was at retail, it must be remembered that even after judgment a complaint will not be viewed with the same strictness on habeas corpus as if tested by a demurrer or on appeal from the judgment. And again, that the common-law rule of strict construction of complaints and indictments has been liberalized by force of statute. Sections 208, 209, 622, Criminal Pr. Act (Rev. Laws, secs. 7058, 7059, 7472). By the terms of said section 3 of the charter of the city of Reno, "the practice and proceedings in said (municipal) court shall conform as nearly as practicable, to the practice and proceedings of justice's courts

in similar cases." It is true the words "at retail" employed in the ordinance are omitted from the complaint, "but other words conveying the same meaning may be used" as permitted by section 208, supra. And if "the act or omission charged as an offense is clearly and distinctly set forth in ordinary and concise language, without repetition, and in such a manner as to enable a person of common understanding to know what is intended," it will be sufficient. Section 209, supra. With these statutory rules, and the nature of this proceeding in mind, we are of the opinion that the complaint which charges the petitioner with peddling from a railroad box car without procuring a license is sufficient. To constitute peddling there must be selling and delivering to customers. 21 R. C. L. 184. The use of the word "peddling" was therefore sufficient to inform petitioner that he was charged with selling and delivering at retail.

9. By the terms of section 1 of the ordinance, a freight car is not a fixed place of business. So it having been alleged that the peddling was from a railroad box car, it was unnecessary to allege that it was not a fixed place of business.

10. We are uncertain as to whether petitioner seeks to make a point as to the sufficiency of the complaint from the fact that the term "railroad box car" is used therein instead of "freight car" as employed in the ordinance. However, it is not likely that petitioner was misled by the former term in the complaint.

The writ is dismissed.

### ON PETITION FOR REHEARING

December 19, 1924.

*Per Curiam:*

Rehearing denied.