UNITED STATES OF AMERICA: AEROJET GENERAL CORP., an Ohio Corporation; PAN AMERICAN WORLD AIRWAYS, INC., a New York Corporation; CATALYTIC CONSTRUCTION CO., a Delaware Corporation; REYNOLDS ELECTRICAL AND ENGINEERING CO., INC., a Texas Corporation; SHAFT DRILLER, INC., a Texas Corporation; and E. G. & G., INC., a Massachusetts Corporation, Appellants, v. THE STATE OF NEVADA, Ex Rel. WILLIAM P. BEKO, District Attorney of Nye County, Nevada, Respondent.

No. 6552

February 18, 1972                                    493 P.2d 1324

*Fred B. Ugast,* Acting Assistant Attorney General; *Meyer Rothwacks, William Massar, Daniel B. Rosenbaum,* Department of Justice, Washington, D.C.; *Bart M. Schouweiler,* United States Attorney; *John L. Endicott, Thomas B. Pitcher,* of Los Angeles, California, for Appellant United States of America.

*Robert W. Austin, John L. Thorndal,* of Las Vegas, for Appellants Aerojet General Corp., Pan American World Airways, Inc., Catalytic Construction Co., Reynolds Electrical and Engineering Co., Inc., Shaft Drillers, Inc., and E. G. & G., Inc.

*Robert List,* Attorney General; *William P. Beko,* District Attorney, and *Peter L. Knight,* Deputy District Attorney, Nye County, for Respondent.

## O P I N I O N

By the Court, ZENOFF, C. J.:

This is a taxpayer's suit challenging two taxing statutes, appellants' intention being to recover taxes paid under protest.

In 1965 the Nevada Legislature enacted two revenue statutes, NRS 361.157 and 361.159 (1965 Nev. Stats., ch. 432), which were designed to place on the county tax rolls property, otherwise exempt, utilized in connection with a business conducted for profit. Pursuant to this statute, the Nye County Assessor levied taxes against the appellant contractors, each of whom is a private corporation engaged in a for-profit business and qualified to conduct that business in Nevada.

Under contracts with the Atomic Energy Commission real and personal property owned by the United States at the Nevada Test Site in Nye County, Nevada, is utilized in the conduct of appellants' businesses. These businesses are basically similar in nature.

Reynolds Electrical and Engineering Co., Inc., provided general support services including construction and maintenance services, technical support services and special or related service. E. G. & G., Inc., provided scientific services at the Test Site for the AEC. Shaft Drillers, Inc., provided drilling services in connection with the nuclear tests conducted at the Test Site. This is the only contractor in the present suit which does not operate on a cost-plus-fixed-fees basis.

The remaining appellant contractors used exempt property in connection with their for-profit businesses relating to work at the Test Site's Nuclear Rocket Development Station. The employment of exempt property under the above contracts was in all relevant respects substantially similar to the uses under the Reynolds and E. G. & G., contracts.

The Nye County Assessor's office sought real and personal property declarations from all persons or other entities in the county who were thought to be using otherwise tax exempt property in a profit-motivated business manner. After time extensions and substantial delay the government contractors filed under protest their declarations upon which the assessments were made. The time period wherein assessments were made under review by this appeal is from the act's effective date (April 13, 1965) through June 30, 1967. None of the assessments exceed the rate of 35 percent of full cash value of the real and personal property used by appellants. Taxes levied under NRS 361.159 for the time interval aggregated $553,198.64. Taxes levied under NRS 361.157 aggregated $240,585.17.

Relative to the assessment practices of the various assessors' offices throughout the State of Nevada the evidence indicated that the assessors and their respective staffs had not been instructed or directed by anyone having or purporting to have authority to treat property owned by the Federal Government or any of its entities any differently than property owned by the state or any of its political subdivisions. No policy of separate treatment existed or prevailed. If and when property thought to be taxable was discovered to be escaping proper levies, it was immediately enrolled and assessed to the proper party. The assessors had no knowledge or information indicating that property owned by the State of Nevada or its

political subdivisions was escaping taxation. For the purpose of enrolling or changing the status of enrolled property the assessors relied on information from the county recorders' offices. Furthermore, the evidence indicated that any failure to assess under the statutes in question resulted directly from a lack of knowledge and information of a taxable use and not from any deliberate, intentional and systematic plan to treat federal property differently than property owned by the state or its political subdivisions.

The trial court found and the evidence indicated that in the entire state, other than the Nye County Assessor, only one county assessor assessed taxes during the period in question under NRS 361.157 and 361.159. Other than the six Test Site contractors two companies were taxed.

The Federal Government was granted leave to intervene because it will have to stand the financial burden of taxes found to be due and owing. There is an unresolved dispute between the government and Shaft Drillers, Inc., whether the government is required to reimburse Shaft Drillers, Inc., for any taxes found to be due from it. The trial court found that all administrative remedies had been exhausted.

The statutes around which this litigation revolves are as follows:

361.157 *Exempt real estate subject to taxation when leased to, used in business conducted for profit; exceptions.*

1. When any real estate which for any reason is exempt from taxation is leased, loaned or otherwise made available to and used by a private individual, association, partnership or corporation in connection with a business conducted for profit, it shall be subject to taxation in the same amount and to the same extent as though the lessee or user were the owner of such real estate. This section does not apply to:

(a) Property located upon or within the limits of a public airport, park, market, fairground or upon similar property which is available to the use of the general public; or

(b) Federal property for which payments are made in lieu of taxes in amounts equivalent to taxes which might otherwise be lawfully assessed; or

(c) Property of any state-supported educational institution; or

(d) Property leased or otherwise made available to and used by a private individual, association, corporation, municipal corporation, quasi-municipal corporation or a political subdivision under the provisions of the Taylor Grazing Act or

by the United States Forest Service, the Bureau of Reclamation of the United States Department of the Interior or other federal agency.

(e) Property of any Indian or of any Indian tribe, band or community which is held in trust by the United States or subject to a restriction against alienation by the United States.

2. Taxes shall be assessed to such lessees or users of real estate and collected in the same manner as taxes assessed to owners of real estate, except that such taxes shall not become a lien against the property. When due, such taxes shall constitute a debt due from the lessee or user to the county for which such taxes were assessed and if unpaid shall be recoverable by the county in the proper court of such county.

361.159 *Exempt personal property subject to taxation when leased to, used in business conducted for profit.*

1. Personal property exempt from taxation which is leased, loaned or otherwise made available to and used by a private individual, association or corporation in connection with a business conducted for profit is subject to taxation in the same amount and to the same extent as though the lessee or user were the owner of such property.

2. Taxes shall be assessed to such lessees or users of such personal property and collected in the same manner as taxes assessed to owners of personal property, except that such taxes shall not become a lien against such personal property. When due, such taxes constitute a debt due from the lessee or user to the county for which such taxes were assessed and if unpaid shall be recoverable by the county in the proper court of such county.

This legislation has been amended once, 1967 Nev. Stats., ch. 88 (approved March 6, 1967), wherein NRS 361.157(1)(d) was shortened by deleting the last three words.

The issues presented to this court are:

1. Whether the contractor's utilization of government property in the performance of their contracts with the government is taxable under NRS 361.157 and 361.159.

2. Whether during the period in issue NRS 361.157 and 361.159 were administered (a) in violation of the 14th Amendment and the supremacy clause of the Federal Constitution, and (b) in violation of the uniformity provision, Article 10, § 1 of the Nevada Constitution.

3. Whether NRS 361.157, as applied, operated to unconstitutionally discriminate against the government or the users of its real property.

1.A.   The appellants contend that the Nevada Legislature did not intend these tax statutes to be applied to the fact situation presented in this appeal citing a statement in United States v. City of Detroit, 355 U.S. 466, 470 (1958), that the purpose of the Michigan statute there upheld and allegedly the source of the instant Nevada statutes was "to equalize the annual tax burden carried by private businesses using exempt property with that of similar businesses using nonexempt property."

No Nevada authority is cited for their proposition that this court will presume such intendment by the legislature to adopt another state's construction. Although it is not absolutely binding upon courts, it is the general rule and the rule in Nevada that a statute adopted from another state will be presumed to have been adopted from another with the construction placed upon it by courts of that state before its adoption. Kramer v. State, 60 Nev. 262, 108 P.2d 304 (1940); Cooper v. Liebert, 81 Nev. 341, 344, 402 P.2d 989 (1965). If we were to adopt the construction the Michigan Supreme Court places on these statutes, this court would be obliged to uphold them because the Michigan court ruled that the tax was neither discriminatory nor on the property of the United States but instead was a tax on the lessee's privilege of using the property in a private business conducted for profit. United States v. City of Detroit, 345 Mich. 601, 77 N.W.2d 79 (1956).

There is no evidence of legislative intendment that the statutes should not be applied where the contractual services were provided to the government as opposed to being provided to some other private entity, or that in any other respects these statutes were not applied in the instant case as intended.

In upholding a use tax upon a federal contractor the Utah Supreme Court in Thiokol Chemical Corporation v. Peterson, 15 Utah 2d 355, 393 P.2d 391, 395 (1964), emphasized that the tax statute was an "attempt to close gaps in the tax structure by placing a tax upon the privilege of possessing and using in a business for profit any property which is otherwise exempt. . . ."

1.B.   The appellants next contend that NRS 361.157 and 361.159 are not applicable to them under the standards formulated and applied by the trial court.

In an attempt to categorize, classify and tabulate the numerous private uses of exempt property throughout the state the trial judge thought it his duty to formulate a test. Appellants contend that by comparing exemptions given by the trial court to certain medical specialists and other casual and incidental uses with the Test Site contractors' use an inconsistent application becomes evident.

There are two answers to this contention. First, we are dealing in an area or province set aside to the trial court's discretion and function. Unless it is clearly wrong or erroneous the appellate court should not upset its decision. The trial court conscientiously set out a standard and classified the various exempt uses. We cannot see that it misapplied the test it created. Second, even if the trial court erred in its classification, that there may be a few more exempt uses which are taxable, this does not advance appellants' case. As will be set out, the appellants must prove an intentional, deliberate and systematic discrimination against them before relief is granted. To claim that certain exempt uses are taxable but not taxed changes appellants' position little relative to their taxation.

Specifically the appellants contend that the Test Site contractors did not utilize the government's property in the conduct of their own business.

The appellants agree with the trial court that the contractors were independent and were not agencies or instrumentalities of the government, thus this issue is removed. As to the balance, this court is aided substantially by the United States Supreme Court's decision in United States v. Boyd, 378 U.S. 39 (1964), wherein the Court concluded that the private contractors who operated the AEC plant at Oak Ridge, Tennessee, were subject to state taxation. Specifically, the Court said at 44, 45:

The use by the contractor for his own private ends—in connection with commercial activities carried on for profit—is a separate and distinct taxable activity.

. . . .

"The vital thing" is that Carbide, as well as Ferguson, "was using the property in connection with its own commercial activities." United States v. Township of Muskegon, 355 U.S. 484, 486. [Footnotes omitted.]

2.A.   If the statutes are deemed applicable, as we so hold, the appellants claim that the statutes are unconstitutional. The trial court found that during the time period under consideration, there were approximately 125 uses of exempt property

that could have been taxed, and that other than the AEC contractors taxed here, only two other uses in the state were taxed. Appellants contend that this fact without an additional showing of intentional deletion is clearly violative of the Fourteenth Amendment to the Federal Constitution.

We are unpersuaded. The trial court found that in no instance was there an intentional deletion of taxable exempt property. Appellants have cited not one case where unintentional deletion of taxable property from the rolls has been ground for relief to the complaining taxpayer under the equal protection clause. The U.S. Supreme Court on numerous instances has had this question presented to it and has uniformly denied relief.

In Sunday Lake Iron Co. v. Wakefield, 247 U.S. 350, 353 (1918), the Court said:

It is also clear that mere errors of judgment by officials will not support a claim of discrimination. There must be something more—something which in effect amounts to an intentional violation of the essential principle of practical uniformity. The good faith of such officers and the validity of their actions are presumed; when assailed, the burden of proof is upon the complaining party.

In Sioux City Bridge v. Dakota County, 260 U.S. 441 (1923), wherein a railroad bridge was assessed at 100 percent of its estimated value while property in the county averaged 55.70 percent for acreage and 49.29 percent for improved real estate, Chief Justice Taft said, at 445, 447:

The purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents. And it must be settled that intentional systematic undervaluation by state officials of other taxable property in the same class contravenes the constitutional right of one taxed upon the full value of his property.

. . . .

It is therefore just that upon reversal we should remand the case for a further hearing upon the issue of discrimination, inviting attention of the well established rule in the decisions of this Court, cited above, that mere errors of judgment do not support a claim of discrimination, but that there must be something more—something which in effect amounts to an intentional violation of the essential principle of practical uniformity.

These authorities have been followed consistently, Hillsborough v. Cromwell, 326 U.S. 620, 623 (1946); Iowa-Des Moines Bank v. Bennet, 284 U.S. 239 (1931); Cumberland Coal Co. v. Board, 284 U.S. 23, 25 (1931); Charleston Assn. v. Alderson, 324 U.S. 182 (1945), and particularly in several cases which have construed statutes similar to NRS 361.157 and 361.159 taxing otherwise exempt property, Marquardt Corp. v. Weber County, 360 F.2d 168, 173 (1966), and Thiokol Chemical Corp. v. Peterson, 15 Utah 2d 355, 393 P.2d 391 (1964).

Further, the courts require the complaining taxpayer to prove the assessor's state of mind to intentionally discriminate before relief is granted. In Southland Mall, Inc. v Garner, 324 F.Supp. 674 (W.D.Tenn. 1971), the court held that a taxpayer may make out a case of intentional discrimination if he establishes that state taxing authorities deliberately or systematically disregarded factors which affect value of taxable property. The court stated, at 676:

We would agree, of course, that a Court may, from evidence of a failure to consider, or even from evidence of a failure to give proper weight to, relevant appraisal factors, infer intentional discrimination, but *such state of mind must be found* to have existed before a denial of equal protection can be found. [Emphasis supplied.]

The court can also notice that these statutes were new in scope and effect. Until there was a legal opinion or a court adjudication on the matter the assessors were rightly hesitant to enroll previously exempt property. This hesitation does not demonstrate a disposition to intentionally or designedly discriminate against these taxpayers. "On the other hand, it is evident that whatever failure of proper and uniform application of the statute there was, stemmed from lack of knowledge and/or misunderstanding of the new law." Thiokol Chemical Corp. v. Peterson, supra, at 396.

2.B.   The appellants assert that because the final incidence of the tax falls upon the Federal Government the tax is voided by the supremacy clause.

Beginning with M'Culloch v. Maryland, 4 Wheat 316 (1817), the United States Supreme Court has struck down taxes where the direct incidence was on the Federal Government or an instrumentality thereof. As recently as 1968 the Court in Agricultural Bank v. Tax Comm'n, 392 U.S. 339 (1968), invalidated a sales tax imposed by Massachusetts on

a National Bank. "There can be no doubt from the clear wording of the statute that the Massachusetts Legislature intended that this sales tax be passed on to the purchaser [here a National Bank]." 392 U.S. 348. Closer to home, the Federal District Court of Nevada, Thompson, D. J., invalidated the Nevada Sales and Use Tax which had direct incidence upon the Nevada AEC operation on purchase of goods through independent contractors. United States v. Nevada Tax Comm'n, 291 F.Supp. 530 (D. Nev. 1968).

However this may be, the U.S. Supreme Court most recently in *Boyd,* supra, upheld taxes imposed upon AEC contractors. The Court said at 49–51:

It is undoubtedly true, as the Government points out, that subjection of government property used by AEC contractors to state use taxes will result in a substantial future tax liability. But this result was brought to the attention of Congress in the debates on the repeal of § 9(b), which exempted the activities of AEC contractors from state taxation; indeed the AEC argued that the repeal would substantially increase the cost of the atomic energy program by subjecting AEC contractors to state "sales and use taxes" and "business and occupation" taxes. Nonetheless, Congress, well aware of the principle that "constitutional immunity does not extend to cost-plus-fixed-fee contractors of the Federal Government, but is limited to taxes imposed directly on the United States," S. Rep. No. 694, 83rd Cong., 1st Sess., 2, repealed the statutory exemption for the declared purpose of placing AEC contractors in the same position as all other government contractors. Act of August 13, 1953, c. 432, 67 Stat. 575. The principles laid down in King & Boozer, Curry, Esso, and Muskegon, we think, strike a proper judicial accommodation between the interests of the States' power to tax and the concerns of the Nation, they are workable, and we adhere to them. If they unduly intrude upon the business of the Nation, it is for Congress, in the valid exercise of its proper powers, not this Court, to make the desirable adjustment. [Footnotes omitted.]

2.C. Appellants contend that the Test Site contractors are entitled to relief under Article 10, § 1 of the Nevada Constitution which requires "a uniform and equal rate of assessment and taxation."

The meaning of this clause has been construed by several early Nevada cases. In State v. Eastabrook, 3 Nev. 173 (1867), holding that a tax on the net proceeds of mines at a

rate either higher or lower than other ad valorem taxes violates Nevada Constitution Article 10, § 1, the court said, at 177:

We have no hesitation in saying that the constitutional convention, in using the language last quoted, meant to provide for at least one thing in regard to taxation: that is, that all *ad valorem* taxes should be a uniform rate or percentage. That one species of taxable property should not pay a higher rate of taxes than other kinds of property.

This case has been cited with approval in Sawyer v. Dooley, 21 Nev. 390, 397, 32 P. 437 (1893) ("All that is required is a uniformity of taxes, and not a uniformity in the manner of assessing or collecting them."), State v. Kruttschnitt, 4 Nev. 178 (1868), and Boyne v. State ex rel. Dickerson, 80 Nev. 160, 166, 390 P.2d 225 (1964).

The trial court found that all assessments do not exceed 35 percent of full cash value of the real and personal property used by defendants. Cf. NRS 361.225. Furthermore, the parties stipulated that all assessments were properly made.

Article 10 requires a uniform rate, which was present in the instant case.

3.A.   Appellants' final contention is that NRS 361.157 is unconstitutional because it operates so as to discriminate against the United States and the users of its real property. NRS 361.- 157, by its terms, is inapplicable to (1) "Property of any state-supported educational institution," and (2) "Property located upon or within the limits of a public airport, park, market, fairground or upon similar property which is available to the use of the general public." Appellants argue that because of those exemptions NRS 361.157 operates so as to discriminate against the United States and users of its real property and is unconstitutional because, as the Supreme Court said in *City of Detroit,* supra, at 473:

It still remains true, as it has from the beginning, that a tax may be invalid even though it does not fall directly on the United States if it operates so as to discriminate against the Government or those with whom it deals.

Since NRS 361.157 does not provide for the taxation of private users of real property owned by state-supported educational institutions, but does provide for the taxation of private users of real property owned by federally supported educational institutions, the statute allegedly discriminates against the United States and the users of its real property.

The trial court did not reach the merits of appellants' present contention, but rejected it for (1) lack of proof that the exemption gave rise to any discrimination in fact (2) lack of standing to urge the unconstitutionality of the exemption of real property owned by state-supported educational institutions (NRS 361.157(1)(c)) since the Test Site contractors were not adversely affected, and (3) because the exemption, if unconstitutional, was severable and did not invalidate the entire statute.

In defining the term "discriminate" it seems clear that the legal concept here is the same as the Fourteenth Amendment's equal protection clause. The case which most favorably supports appellant, Phillips Co. v. Dumas School Dist., 361 U.S. 376 (1960), does not require a higher level of "equal protection" than is prescribed by the Fourteenth Amendment. In *Phillips,* supra, the appellant was taxed under a Texas statute on the full value of the real property which it leases from the Federal Government, while business with similar leases, using exempt property owned by the state and its political subdivisions, are not taxed on their leaseholds at all. Chief Justice Warren stated there the applicable test to be that "[t]he imposition of a heavier tax burden on lessees of federal property than is imposed on other exempt public property must be justified by significant differences between the two classes." 361 U.S. at 383.

In considering the identical exemption here challenged the court in Chrysler Corp. v. Township of Sterling, Macomb County, M., 410 F.2d 62 (6th Cir. 1969), upheld the statute under a similar attack as now presented on two grounds, first, that the exemption in its practical operation did not discriminate against the United States and its lessees because the amount of property of state-supported educational institutions is infinitesimal when compared to the total value of taxable and exempt property in the state. Here, the evidence indicated that only an exempt warehouse and a caterer for the dining commons at the University of Nevada at Las Vegas escaped taxation because of the exemptions. The harm to the government contractors would be *de minimus.* "One who is not injured by an ordinance cannot attack its constitutionality." Ex Parte Noyd, 48 Nev. 120, 129, 227 P. 1020 (1924); Ex Parte Sloan, 47 Nev. 109, 120, 217 P. 233 (1923). Secondly, the circuit court held "that the exemption of the lessees of property of state-supported educational institutions is reasonable and valid because it is founded upon the well-recognized policy of both the United States and the State of Michigan to

protect, promote and support education, including colleges and universities. Chrysler Corp. v. Township of Sterling, Macomb County, M., 410 F.2d 62, 70 (6th Cir. 1969). We subscribe to these views.

3.B. Relative to the exemption of NRS 361.157(1)(a) the circuit court in *Chrysler Corp.*, supra, agreed with the lower court that the concession exemption standing alone does not result in unconstitutional discrimination to the Federal Government or its contractors in respect to this exemption.

Other subsidiary issues raised by appellants have been carefully reviewed and are found to be without merit.

We hold that the statutes are constitutional as applied and that the taxes levied thereunder were proper.

Affirmed.

BATJER, MOWBRAY, THOMPSON, and GUNDERSON, JJ., concur.