STANDARD OIL COMPANY OF CALIFORNIA, A DELAWARE CORPORATION, APPELLANT, *v.* TOM PASTORINO, EUREKA COUNTY ASSESSOR, NEVADA TAX COMMISSION, AND THE STATE OF NEVADA, RESPONDENTS.

No. 9202

June 7, 1978                                              580 P.2d 118

*Vargas, Bartlett & Dixon,* and *Frederic R. Starich,* Reno, for Appellant.

*Robert List,* Attorney General, *James D. Salo* and *Marsha Claman,* Deputy Attorneys General, Carson City, for Respondents.

## OPINION

By the Court, GUNDERSON, J.:

Standard Oil Company of California here appeals a judgment declaring NRS 361.157 constitutional under both the Nevada and federal constitutions, and permitting respondent assessor and tax commission to impose taxes pursuant to the statute. We affirm the district court's determinations.

Standard is lessee under oil and gas leases of real property owned by the Bureau of Land Management in Eureka County. From 1968 to 1973, the Nevada Tax Commission directed the Eureka County Assessor to collect taxes from Standard pursuant to NRS 361.157. The taxes were paid under protest and placed in a suspension fund, pending judicial determination of the tax authorities' right to tax oil leases.

Standard then filed an action to declare NRS 361.157 unconstitutional, and to enjoin respondents from taxing its leases. The parties entered a stipulation of facts, and filed cross-motions for summary judgment. The district court granted the tax authorities' motion for summary judgment, declaring the statute constitutional. Standard here contests that determination, alleging four constitutional infirmities.

1. Standard first contends NRS 361.157(1) violates the supremacy clause of the federal constitution by taxing the real

property of the federal government. *See* U.S Const. art. VI, par. 2.

NRS 361.157(1) provides in relevant part:

> When any real estate which for any reason is exempt from taxation is leased, loaned or otherwise made available to and used by a . . . corporation in connection with a business conducted for profit, it is subject to taxation in the same amount and to the same extent as though the lessee or user were the owner of the real estate.

It is well settled that a state may not directly tax real property of the United States. Agricultural Bank v. Tax Comm'n, 392 U.S. 339 (1968); McCullouch v. Maryland, 17 U.S. 316 (1819). However, a state may tax a lessee of that same federal property so long as the tax does not discriminate against federal lessees in favor of state lessees. *Compare* Moses Lake Homes v. Grant County, 365 U.S. 744 (1961), declaring unconstitutional a Washington statute which taxed federal lessees at full value and state lessees at 50 percent of fair market value, *with* United States v. Detroit, 355 U.S. 466 (1957), holding permissible a tax on all lessees of government property based on full value of property. Standard contends NRS 361.157(1) imposes a direct tax on federal property, urging that the tax is measured by the full value of the land, thereby taxing both the leasehold interest and the reversionary interest held by the government. This argument is neither supported by the evidence, nor by the law.

The record shows the assessor did not tax the full value of the land. He was required to tax only 35 percent of capitalized rental value on competitive leases, and $2.20 per acre on noncompetitive leases. In any event, a state does not violate the supremacy clause by using the full, fair market value of the land as the basis for the assessment. *See United States v. Detroit,* cited above at 470.

We also reject Standard's contention that the statute requires continued taxation once the land reverts from the lessee to the government at the expiration of the leasehold. We will not so broadly construe the statute to reach an unconstitutional result. In our view, NRS 361.157(1) provides for taxation only while the land is subject to a lessee's interest. The tax ceases once it reverts to the government.

2. Standard next claims NRS 361.157(3)(d) invidiously discriminates against certain users of federal lands in violation of the equal protection clause of the federal constitution. *See* U.S. Const. amend. XIV, § 1. This claim is based on the differing

treatment given to certain classes of lessees of federal land—i.e. oil lessees are taxed, while grazing lessees are exempted from taxation.

NRS 361.157 provides in relevant part:

    1.  [Leaseholds may be taxed] . . .

    2.  . . .

    3.  Subsection 1 does not apply to:

    (a) . . .

    (b) . . .

    (c) . . .

    (d) Property leased or otherwise made available to and used by a private individual, association, corporation, . . . or a political subdivision under the provisions of the Taylor Grazing Act or by the United States Forest service or the Bureau of Reclamation or the United States Department of the Interior; . . .

When the statute was amended in 1967, an accompanying preamble specifically provided that the above exemption applied only to grazing lessees: "WHEREAS, The particular exceptions provided by paragraph (d) of subsection [3] were meant to apply only to lands made available for grazing by the named federal agencies . . . which might hold lands suitable for grazing; . . ." 1967 Nev. Stats. 154. Thus, all lessees from the federal government are subject to tax except grazing lessees, and Standard therefore claims this violates the equal protection clause of the federal constitution. We disagree.

While subsection 3(d) does discriminate by providing preferential treatment to grazers, such discrimination will not necessarily violate equal protection if there is a rational basis for the exemption. *See* Allied Stores of Ohio v. Bowers, 358 U.S. 522 (1959). A statute must be upheld "if any state of facts reasonably can be conceived [to] sustain it." Phillips Chemical Company v. Dumas School District, 361 U.S. 376, 383 (1960). "[T]he State's power to classify is, indeed, extremely broad, and its discretion is limited only by contitutional rights and by the doctrine that a classification may not be palpably arbitrary." *Ibid.* "That a statute may discriminate in favor of a certain class does not render it arbitrary if the discrimination is founded upon a reasonable distinction, or difference in state policy." *Allied Stores,* cited above at 528.

Here, the legislature clearly desired to protect grazing interests from onerous tax liability. *See* Preamble to 1967 Nev. Stats., cited above. Grazers do not pay for their "leases" by the acre, but instead must pay the Bureau of Land Management a separate fee for each head of cattle. (The current rate is $1.51 per head per month.) Oil lessees, on the other hand, pay

a flat nominal consideration per acre for their leases. All this indicates the legislature has consciously decided to give grazing interests a tax adjustment, consistent with such business considerations as the cost of obtaining leases from the federal government, and perhaps the fact that their activities do not permanently deplete natural resources. The statutory scheme would therefore appear to have a rational basis, and not to violate equal protection principles. *Cf.* Sproul vs. Gilbert, 359 P.2d 543 (Or. 1960).

3. Appellant next contends oil wells and leases are unpatented "mines" or "mining claims" which are exempt from property taxation pursuant to article 10, § 1 of the Nevada Constitution.

Article 10, § 1 provides in pertinent part:

> The legislature shall provide by law for a uniform and equal rate of assessment and taxation, and shall prescribe such regulations as shall secure a just valuation for taxation of all property, real, personal and possessory, except mines and mining claims, when not patented, the proceeds alone of which shall be assessed and taxed, and when patented, each patented mine shall be assessed at not less than five hundred dollars ($500), except when one hundred dollars ($100) in labor has been actually performed on such patented mine during the year, in addition to the tax on net proceeds; . . .

Appellant insists oil wells and oil leases are "mines and mining claims" within the meaning of the constitution, and should therefore be exempt from property taxation.[1] We need not decide this issue as proffered, however, because the sole question before this court is whether oil *leases* should be exempt from property taxation. We note that in 1975 the legislature defined a "mine" as follows:

"Mine" means:
1. An area of land:

[1]Authority on this point is clearly split. Some jurisdictions have held oil is a mineral, and oil wells are mines. *See* Burke v. Southern Pacific Railway Co., 234 U.S. 669 (1914), citing congressional statutory scheme as the primary basis for the above conclusion; Mid-Northern Oil Co. v. Walker, 211 P. 353 (Mont. 1922), citing *Burke;* Southland Royalty Co. v. American Petroleum Corp., 378 S.W.2d 50 (Tex. 1964). *See also,* Opinions of the Nevada Attorney General No. 405, 109 (1967) meaning of mine for determining the gross yield under the net proceeds of mine act.

On the other hand, other courts have held that an oil well is not a mine. *Cf.* J. M. Guffey Petroleum Co. v. Murrel, 53 So. 705 (La. 1910), oil well not a mine within the meaning of constitutional provision exempting taxation of property used in mining operations; Carter v. Phillips, 212 P. 747 (Okl. 1923),

(a) Where *exploration* is conducted to discover or delineate minerals or mineral commodities in any deposit;

(b) Where development is conducted to prepare or open any deposit of minerals or mineral commodities other than solid fuels for extraction; or

(c) Where exploitation or *extraction* of minerals or mineral commodities other than solid fuels is conducted from any deposit; . . .

3.   Structures, equipment, machinery, apparatus or other property, upon the surface or underground, used or to facilitate the work of exploring, *developing or extracting* minerals or mineral commodities other than solid fuels in or from any deposit; or

4.   Beneficiation plants, mills, smelters, refineries or other property used or to facilitate the treatment or reduction of any minerals or mineral commodities, whether or not contiguous to an area where *exploitation or extraction* of minerals or mineral commodities *is conducted* from any deposit. (Emphasis added.) NRS 512.006.

This, we believe, articulated the fundamental understanding of the term ''mine'' previously existing. Thus, at least until ''mines'' are created through an actual exploration or extraction, the interests in question would be taxable as any other leasehold interest. Therefore, we conclude such totally undeveloped oil leases are not exempted from property taxation within the meaning of article 10, § 1 of the Nevada constitution.

4.   Standard finally claims NRS 361.157 violates article 4, § 17 of the Nevada Constitution which provides in pertinent

---

an oil well not a mine for income tax purposes; Hollingsworth v. Berry, 192 P. 763 (Kan. 1920), an oil well not a mine under workmen's compensation coverage; Barton v. Wichita River Oil Co., 187 S.W. 1043 (Tex.Civ.App. 1916), an oil well not a mine for purposes of statutory lien.

Support for the latter view can also be found in common understanding. Webster has defined ''minerals'' as ''any chemical element or compound occurring naturally as a product of inorganic process . . .;'' and ''mine'' as ''a pit or excavation in the earth from which ore, precious stones, coal, or other mineral substances are taken by digging or by any of various other mining methods . . .'' *Webster's New International Dictionary* (2nd ed. 1961). Because oil is an organic substance, it does not fall within the accepted definition of mineral. In examining the *Nevada Constitutional Debates and Proceedings* (1864), it also appears the framers only made reference to mines as they existed in 1864—i.e., silver, gold, and quartz mines. *Ibid.* 318–386.

In oral argument, appellant mistakenly stated our decision in State v. Ellison Ranching Co., 93 Nev. 575, 571 P.2d 394 (1977), clearly established that an oil well is a mine. That issue was not considered, and the opinion does not support appellant's claim.

part: "Each law enacted by the Legislature shall embrace but one subject, and matter, properly connected therewith, which subject shall be briefly expressed in the title; . . ." Curiously, appellant now contends the property tax levied under 361.157 is really a privilege and use tax. None of its authority stands for the stated proposition, and courts dealing with lessee taxation have regarded the assessment as an ad valorem property tax. *Cf.* United States v. State ex rel. Beko, 88 Nev. 76, 493 P.2d 1324 (1972); *Sproul,* cited above. Therefore, NRS 361.157 does not violate the above constitutional mandate. It embraces but one subject—i.e., property taxation.

BATJER, C. J., and MOWBRAY, THOMPSON, and MANOU-KIAN, JJ., concur.