ALBERT B. BOYNE, Assessor of Washoe County, Nevada; ROGER TEGLIA and RUTH TEGLIA, Husband and Wife, Appellants, *v.* THE STATE OF NEVADA, on the Relation of Harvey Dickerson, as Successor of Roger D. Foley, Attorney General, Respondent.

No. 4681

March 19, 1964                    390 P.2d 225

*William J. Raggio,* District Attorney, and *David G. Parraguirre,* Deputy District Attorney, Washoe County, for Appellants.

*Harvey Dickerson,* Attorney General, and *Gabe Hoffenberg,* Chief Deputy Attorney General, Carson City, for Respondent.

# OPINION

By the Court, BADT, C. J.:

The nature of the action, the points of law involved, and the treatment and disposition thereof, before this court, are in all respects the same as those in the court below. They were treated by the learned district judge in his opinion and decision as follows:

"This is an action for declaratory relief to declare unconstitutional Chapter 300, Statutes of Nevada, 1961, and has been filed by the Attorney General on behalf of the State of Nevada against Albert B. Boyne, Assessor of Washoe County and Roger and Ruth Teglia. It has been presented to the Court upon plaintiff's Opening Brief and Defendants' Answering Brief.

"The question presented herein grows out of the inevitable collision between problems pertaining to the assessment of agricultural lands adjacent to or near urban subdivided properties and involves the validity of an attempt by the Nevada Legislature to shift or defer the burden of increased taxation which is one of the consequences of increased population pressures.

"The question is whether agricultural people against their will should be required to sell their property or convert it to a higher and better use by reason of higher assessments and higher taxes based thereon. Opposed to that view are certain well recognized statutory and constitutional tax provisions which relate to the principles

of uniformity and equal treatment under our law of taxation.

"Because of this situation, the Nevada Legislature in 1961 passed Chapter 300 (N.R.S. 361.313) which provides as follows:

" '1. Any owner of land which is used exclusively for agricultural purposes, but has a full cash value for other purposes greater than its full cash value for agricultural purposes, may contract with the county assessor for the assessment of and payment of taxes on such land as provided in this section and N.R.S. 361.314.

" '2. The contract may be entered into prior to November 1 of any year, and shall provide:

" '(a) That the land shall be assessed at its full cash value for agricultural purposes only, and at the same time, the assessor shall make and enter as a notation on the assessment roll a potential assessment based upon the full cash value of the land for purposes other than agricultural purposes.

" '(b) That the owner shall pay taxes only on the basis of the assessment of the land for agricultural purposes, unless he sells the land or changes its use.

" '(c) That when the land is sold or its use changed, the owner will pay in additional taxes the difference between the taxes paid or payable on the basis of the assessment for agricultural purposes during the 5 years immediately preceding the year in which the sale or change of use occurs and the taxes which would have been paid or payable during such period on the basis of the potential assessment for purposes other than agricultural purposes.

" '(d) That if the land is sold or its use changed within 5 years of the date of the contract, the owner will pay such additional taxes for the year in which the contract was made and for each year intervening between such year and the year in which the sale or change of use occurs.

" '(e) That the additional taxes due on the basis of the potential assessment shall become a lien upon the land on the date the land is sold or its use changed.

" '3. No contract entered into pursuant to the provisions of this section shall be valid until recorded in the office of the county recorder of the county or counties in which all or any part of the land is located.'

"As appears from the Attorney General's Opening Brief, page 4,

" 'N.R.S. 361.313 and 361.314 were added to the Nevada Revised Statutes by virtue of Chapter 300, Statutes of Nevada 1961. They govern the manner of taxing real property used for agricultural purposes. In substance, the statutes authorize assessment of ad valorem taxes on such property at its "full cash value for agricultural purposes only", even though the land may have a higher "full cash value" if other uses are considered.'

"And in a footnote, thereto, it is said:

" 'Accordingly, if the owner of the land does not sell or change its use, he may continue to pay taxes based on an assessment for agricultural use only. If the owner should change the use of the property or sell it, he will be taxed on the difference between the assessed value for agricultural purposes and the assessed value for all other purposes for a five-year period preceding the sale or change in use. If the period from the date of execution of the prescribed agreement with the county clerk to the sale or change of use is shorter than five years, the landowner will pay the difference for this period.'

"[A]pplicable Constitutional provision[s] are * * * as follows:

" '[Article X] Section 1. The legislature shall provide by law for a uniform and equal rate of assessment and taxation, and shall prescribe such regulations as shall secure a just valuation for taxation of all property, real, personal and possessory * * * [shares of stock * * *, bonds, mortgages, notes, bank deposits, book accounts and credits, and securities and choses in action of like character are deemed to represent interest in property already assessed and taxed, either in Nevada or elsewhere, and shall be exempt. * * *]'

"Section 20 of Article IV of the Nevada Constitution, in part, provides as follows:

" 'The legislature shall not pass local or special laws in any of the following enumerated cases—that is to say:

\* \* \* \* \*

" 'For the assessment and collection of taxes for state, county, and township purposes; \* \* \*'

"Section 21 of the same article reads as follows:

" 'In all cases enumerated in the preceding section, and in all other cases where a general law can be made applicable, all laws shall be general and of uniform operation throughout the State.'

"At the time N.R.S. 361.313 was enacted into law, numerous opinions were given concerning its validity, and it was the apparent consensus that such a statute was unconstitutional upon a variety of grounds. Since then, however, our research has disclosed that in some instances, statutes of some of the predominantly agricultural states have been upheld as constitutional, either because of constitutional provisions which recognize inherent differences or for other reasons, perhaps of an economic necessity.

"In any event, our inquiry is to be confined to Nevada, its constitution and the laws made thereunder.

"In view of the general rule that all presumptions are in favor of the validity of statutes and that a classification made by the Legislature will not be overthrown unless it is palpably unreasonable and arbitrary, I think, that any inquiry into the constitutionality of a statute should be approached with considerable trepidation.

"The equality guaranteed by the equal protection clause is equality under the same conditions and among persons similarly situated. The Legislature may make reasonable classifications with respect to persons, businesses, property and other activities but those classifications must not be arbitrary and must be based upon some difference in the classes having a substantial relation to the legitimate object to be accomplished.

"With respect to tax classifications at page 669, it is said in Rottschaefer on Constitutional Law:

" "* * * A classification based on the location of the property within the taxing district is generally held invalid, *although the assessment of agricultural lands situated within a city's limits on a less onerous basis than the more urban property within those limits is at times sustained.* * * *'

"I have cited and underlined this particular phrase because it is indicative of the split of authority in cases of this kind; a difference which is referred to by counsel for the defendants whose frankness in fairly citing the law is most appreciated.

"The applicable cases have been collected in 111 ALR 1486, in which it is said:

" 'While there is some conflict among the authorities, a majority of the cases from jurisdictions whose constitutions require taxes to be uniform hold that classification of land for the purpose of property taxation as agricultural and otherwise results in an unconstitutional discrimination. However, some constitutions apparently do not require taxes to be uniform.'

"Nevada has such a requirement of uniformity. (Article X, Section 1)

"The authorities, since 1937, when the annotation was prepared, likewise continue to illustrate this difference between the majority and minority rule.

"It appears that this problem has been approached from the standpoint of three different theories; first, that a legislature, in the absence of constitutional provision, has no authority to differentiate between ad valorem tax requirements; second, that such a division between agriculture and non-agricultural lands is an unreasonable and arbitrary classification; and third, that such an attempted differentiation creates an illegal partial exemption.

"Whatever theory or theories may be applicable to the particular problem, it is apparent that numerous instances have occurred where courts have referred to the general rules concerning classifications for tax purposes and yet, with all that, it is equally apparent that

only an examination of the particular facts will support or sustain the application of a theory or theories.

"It is self-evident under Nevada Law that no special laws can be passed 'for the assessment and collection of taxes for state, county and township purposes' (Article IV, Section 20) ; that 'all laws shall be general and of uniform operation throughout the State' (Article IV, Section 21) ; that the 'Legislature shall provide by law for a uniform and equal rate of assessment and taxation, and shall prescribe such regulations as shall secure a just valuation for taxation of all property' (Article X, Section 1) ; that 'all ad valorem taxes should be of a uniform rate or percentage' (State v. Eastabrook, 3 Nev. 173, 177) ; and that as a proposition of general rule of law, a partial exemption is not to be favored (State Tax Commission v. Wakefield (Md), 161 A.2d 676). Therefore, in deciding the constitutionality of N.R.S. 361.313–314, the ancient principles of uniformity, equality, justness and fairness permeate the law, principles which cannot now be ignored. Applying those precepts, it is eminently clear that the owners of agricultural property have been given a distinct tax advantage over other real property owners, something which I do not believe was contemplated by the framers of our Constitution. On the other hand, there is a clear constitutional mandate [that the legislature provide a uniform and equal rate of assessment and taxation and secure a just valuation for taxation of all property].

"This problem has been submitted to me upon the pleadings and briefs. It has not been submitted upon an agreed statement of facts or upon any oral or documentary evidence. Hence any advantages to the rancher or the community for such a classification are only the subject of conjecture.

"While there may be some valid reasons advanced which would justify preferential treatment to a rancher, such reasons are fast dissolving into the realm of speculation where the impact of an urban explosion has engulfed the one time agricultural operation, which inevitably must give way to urban encroachment. In

this connection one of the possible but unmentioned reasons assigned to this preferential treatment, to-wit: that the rancher, against his will, must sell to pay the cost of mounting taxes is not necessarily true because I should like to point out that urban encroachments, in many instances, have increased property valuations to the selling owner's advantage.

"After considering the weight of authority, Nevada constitutional principles and authorities as well as the general considerations to which reference has been made, I conclude that the classification set forth in N.R.S. 361.313–314 is unreasonable and unfairly discriminates in favor of one group against another and, therefore, is declared unconstitutional and of no force and effect."

We adopt the opinion of the district court as our opinion and cite in addition the following cases: Custer County v. St. Louis-San Francisco Ry. Co., 201 Okl. 528, 207 P.2d 774; Corporation of Sevierville v. King, 182 Tenn. 143, 184 S.W.2d 381; Simmons v. Ericson, 54 S.D. 429, 223 N.W. 342. Cf. Switz v. Kingsley, 69 N.J.Super. 27, 173 A.2d 449; State Tax Commission v. Wakefield, 222 Md. 543, 161 A.2d 676.

The judgment is affirmed. No costs are awarded.

McNAMEE and THOMPSON, JJ., concur.