In the Matter of the Appeal from an Order of the North Dakota Tax Appeals Board Granting an Application by Gordon Caldis, William D. C. Blair and G. E. Satrom for Abatement and Settlement of Taxes.

Gordon CALDIS, William D. C. Blair, and G. E. Satrom, Appellees,

v.

BOARD OF COUNTY COMMISSIONERS, GRAND FORKS COUNTY, North Dakota, and City of Grand Forks, a Municipal Corporation, Appellants,

and

Byron Dorgan, State Tax Commissioner of North Dakota, School District of the City of Grand Forks, and the Park District of the City of Grand Forks, North Dakota.

Civ. No. 9535.

Supreme Court of North Dakota.

May 24, 1979.

Caldis & Arneson, Grand Forks, for appellees; argued by Gordon Caldis, Grand Forks.

Robert B. Hunter, Asst. City Atty., Grand Forks, and Thomas B. Jelliff, State's Atty., and James T. Odegard, Asst. State's Atty., Grand Forks, for appellants; argued by Robert B. Hunter, Grand Forks.

Kenneth M. Jakes, Sp. Asst. Atty. Gen., Bismarck, for State Tax Commission.

PEDERSON, Justice.

Grand Forks County and the City of Grand Forks appeal from the district court's affirmance of the Tax Appeals Board decision reducing a 1975 ad valorem tax assessment by Grand Forks County on land within the City of Grand Forks owned by Gordon Caldis, William D. C. Blair and G. E. Satrom. Hereinafter we will refer to the land involved as the ˚Caldis land, and the owners as Caldis.

As required by § 57–23.1–02, North Dakota Century Code, the state tax commissioner and the Grand Forks city, school and park districts were named as parties in the district court. The statute does not describe the method to be used to add these parties, and apparently it does not require that they receive notice of an appeal to the district court.[1] The tax commissioner did not participate in either the proceedings before the Tax Appeals Board or in the district court. The record includes an affidavit of service by mail dated January 19, 1978, disclosing that Grand Forks County served notice of the appeal on the attorney general and the tax commissioner. The commissioner contends that notice of the appeal was never received by his agency, and no mailing receipts are included in the record to show that notice was actually received.

■ Although the tax commissioner did not participate in the hearings before the Tax Appeals Board or in the district court, he has raised, before our court, the following issues relating to the constitutionality and procedural scope of the Tax Appeals Board, § 57–23.1–02, NDCC: .

(1) Has the Legislature delegated judicial power to the Tax Appeals Board in violation of the principle of separation of powers?

(2) If there is a proper delegation of power, are the Tax Appeals Board's procedures subject to the Administrative Agencies Practice Act, Ch. 28–32, NDCC?

Our court has reiterated the general rule numerous times that parties cannot raise an issue for the first time on appeal to the supreme court, except in cases involving original jurisdiction and certain criminal matters. *Odegaard v. Craig*, 171 N.W.2d 133, 137 (N.D.1969); *Family Center Drug v. North Dakota St. Bd. of Pharm.*, 181 N.W.2d 738, 745–746 (N.D.1970). Sound reasons exist to support this rule.

". . . when an appellate court proceeds on a theory which was not advanced by the parties there is no fair opportunity for the litigants to meet the issues, and there is an increased chance that the appellate court will commit error." *In the Matter of the Application of Center State Bank*, 276 N.W.2d 132, 134 (N.D.1979).

It is fundamental to the adversary process that each party be afforded an opportunity to bring up its "heavy artillery" in defense of or attack upon an issue, especially if the issue is of a constitutional nature. See *So. Valley Grain Dealers v. Bd. of Cty. Com'rs*, 257 N.W.2d 425 (N.D.1977). More importantly, however, is the danger of usurping the district court's function in the judicial process. By deciding an issue not previously raised, we infringe upon the opportunity of the district court to consider the question as the court of first instance.

We recognize that the tax commissioner has raised two questions of significant public concern. We will not, however, address these issues because they have not been properly raised for our consideration. Caldis, and the City and County have not been given sufficient opportunity to develop a response to these issues in the proceedings conducted before the Tax Appeals Board and the district court. Although we prefer to reach the merits of each question raised on appeal, we are reluctant to do so at the risk of thwarting an opportunity for all of the parties to develop adequate argument. We are also reluctant to diminish the role of the district court. Accordingly, we will

---

1. In *Schroeder v. Burleigh Cty. Bd. of Com'rs*, 252 N.W.2d 893 (N.D.1977), our court held that the Rules of Civil Procedure govern procedures on appeal from a decision of an administrative agency except where applicable statutes are inconsistent with the Rules.

consider only the issues properly raised by the City and County.

The City and County raise three principal issues on this appeal:

(1) Does § 57–02–27, NDCC, as amended by the Legislature in 1973, retroactively apply to agricultural lands annexed to a city prior to 1973?

(2) If § 57–02–27, NDCC, as amended, applies retroactively, is the statute violative of equal protection under the North Dakota Constitution and the Fourteenth Amendment to the United States Constitution as an arbitrary classification?

(3) Does § 57–02–27, NDCC, as amended, violate § 179 of the North Dakota Constitution?

When the Caldis land was first annexed to the City of Grand Forks it was designated and assessed for tax purposes as an "I 2 General Industrial District." In 1972, approximately one-third of the Caldis land was rezoned to allow construction of a mobile home park. The remaining undeveloped land was rezoned for limited commercial and service business. Although utility lines and concrete paving were installed shortly after it was rezoned, use of the undeveloped land has remained essentially agricultural since the time of its annexation.

In 1975, the City and County did not classify the undeveloped Caldis land as agricultural but did place comparative agricultural lands located within the city limits in this category. In support of its order for abatement of taxes assessed against the Caldis land, the Tax Appeals Board made detailed findings of fact and conclusions of law. The Board concluded that § 57 02 27, NDCC, must be applied to all agricultural

lands within the city limits, regardless of the date of annexation, in order to accomplish uniformity of taxation on the same class of property. Section 176, North Dakota Constitution. In the view of the Tax Appeals Board, assigning different assessed values on annexed agricultural land on the basis of the time it was annexed to the City would result in an unequal assessment of the same class of property located within the city limits.

In affirming the Board's decision, the district court concluded that the City and County of Grand Forks had not substantiated the existence of any of the factors enumerated in the Administrative Agencies Practice Act, § 28 32 19, NDCC.[2]

## I.

The City and County assert that § 57–02–27, NDCC, as amended in 1973, does not apply to agricultural land duly annexed to a city prior to 1973. In support of this assertion, the City and County rely upon the legislative circumstances under which the amendment to § 57 02 27 was enacted in 1973 and the rules of statutory interpretation contained in Ch. 1 02, NDCC. They argue that § 57 02 27 must be interpreted as a prospective condition of annexation to which the City has bound itself for the promotion of orderly urban growth. Section 57 02 27, as amended, provides in relevant part:

"Agricultural lands within the corporate limits of a city, whether or not platted, *shall constitute agricultural property and be so classified and valued for ad valorem property tax purposes until such lands are put to another use.* Such valuation shall be uniform with the assessed value

---

**2.** Section 28–32–19, NDCC, requires that, in an appeal from an administrative agency decision without a jury, the evidence considered by the court shall be confined to the record. The court shall affirm the agency's decision unless the court finds that any of the following factors exist:

1. The decision or determination is not in accordance with the law.
2. The decision is in violation of the constitutional rights of the appellant.

3. Provisions of this chapter have not been complied with in the proceedings before the agency.
4. The rules or procedure of the agency have not afforded the appellant a fair hearing.
5. The findings of fact made by the agency are not supported by a preponderance of the evidence.
6. The conclusions and decision of the agency are not supported by its findings of fact.

of adjoining unannexed agricultural land." [Emphasis added.]

This amendment was passed by the Legislature as part of Chapter 337, S.L.1973, in conjunction with amendments to §§ 40-51.-2-06, 40-51.2-07(3), and 40-51.2 16, NDCC, which all relate to annexation by cities under Chapter 40-51.2, NDCC, entitled "Annexation and Exclusion of Territory." The following language relating to ad valorem taxation of annexed agricultural property was incorporated into the amendments to the annexation statutes:

". . . the municipal corporation shall continue to classify as agricultural lands for tax purposes all lands in the annexed area which were classified as agricultural lands *immediately prior to such annexation proceedings until such lands are put to another use.*" See, for example, § 40-51.2-06, NDCC. [Emphasis added.]

This language states, unequivocally, that all lands in a newly annexed area which were classified as agricultural at the time they were annexed shall remain in this category until put to another use. By its terms, the language applies prospectively to insure that newly annexed agricultural property will be assessed as such after it becomes part of a townsite.

The City and County assert, on the one hand, that § 57-02-27, as amended, should be interpreted to apply prospectively in the same manner in which the 1973 amendments to Ch. 40-51.2, NDCC, apply. On the other hand, Caldis contends that in order to avoid classification of property in violation of § 176 of the North Dakota Constitution, all agricultural property within the city limits must be assessed uniformly regardless of when it was annexed.

**3.** Section 57-02-01, NDCC, defines "true and full value" as the usual selling price at the place where the property is located, that being the price at which it could be obtained at private sale and not at a forced public auction sale. In arriving at true and full value, consideration may be given to the earning or productive capacity, the market value, and all other matters that affect the actual value of the property to be assessed.

A statute is ambiguous if its provisions are susceptible to more than one interpretation. The question of how § 57-02-27 is to be applied to lands annexed by a city prior to 1973 is subject to alternative constructions, each of which would yield different results. A prospective interpretation would require the Caldis land to be classified and assessed at its true and full value as other than agricultural property because it was annexed prior to 1973.[3] A retrospective application would restrict the Caldis land's classification and assessment as of 1973 to that of agricultural property until it is put to another use.

When we interpret a statute, our court must endeavor to give it validity and must seek to uphold the legislative intent expressed in its provisions. *Tang v. Ping*, 209 N.W.2d 624, 628 (N.D.1973); *City of Fargo v. Annexation Review Commission*, 148 N.W.2d 338, 352 (N.D.1967). A statute carries a heavy presumption of constitutionality. *So. Valley Grain Dealers v. Bd. of Cty. Com'rs, supra*, 257 N.W.2d at 434. When there are two possible interpretations of a statute, the interpretation that produces an unconstitutional application should be rejected in favor of the one that produces a constitutional application to a particular fact situation.

The City and County urge us to apply the rule of construction contained in § 1-02-10, NDCC, which provides that a statute is not retroactive unless the Legislature has expressly declared it to be so.[4] Ordinarily, all rules of construction are subservient to the rule that the intent and purpose of the Legislature should be given effect. *City of Dickinson v. Thress*, 69 N.D. 748, 290 N.W. 653 (1940). It must be remembered that this court will construe a legislative enactment as constitutional if at all possible. *Tang v. Ping, supra.*

**4.** Several recent opinions of our court have discussed the issue of "retroactive" versus "prospective" application of particular statutes. Among these cases are: *Reiling v. Bhattacharyya*, 276 N.W.2d 237 (N.D.1979); *In Interest of W. M. V.*, 268 N.W.2d 781 (N.D.1978); *Young v. White*, 267 N.W.2d 799 (N.D.1978).

Under Section 176 of the North Dakota Constitution the following restriction is placed upon the taxation powers of the Legislature:

"Taxes shall be uniform upon the same class of property including franchises within the territorial limits of the authority levying the tax. . . . ."

█ If we were to apply § 57-02–27 prospectively, only, and hold that agricultural property annexed prior to 1973 must be classified and assessed at full value as other than agricultural, we would give the statute an unconstitutional interpretation. We would abrogate the North Dakota constitutional requirement of uniformity by placing property used for the same purpose in different classes and assessing it at different rates.[5] This does not mean that agricultural lands located within a city are now entitled to be reassessed as agricultural for the years preceding 1973. The amendment to § 57–02–27 is effective only as to assessments made by a municipality on annexed agricultural property upon the effective date of its provisions.[6] Accordingly, we hold that § 57–02–27, as amended, is to be construed retroactively as well as prospectively, and conclude that all lands used for agricultural purposes within a taxing district shall be included in one class and shall be assessed uniformly regardless of the date of annexation.

## II.

Having concluded that § 57 02 27, NDCC, as amended, applies to all property used for agricultural purposes within a city, the second issue raised for our determination is whether the statute violates equal protection under the North Dakota Constitution and the Fourteenth Amendment to the United States Constitution. The City and County assert that if the amendment is interpreted to mean that agricultural lands already annexed as of 1973 must be assessed and valued uniformly with adjoining unannexed land, then the amendment must fail as an arbitrary classification in relation to other property owners within the city.

The Legislature is vested with broad power to classify property for ad valorem tax purposes under § 176 of the North Dakota Constitution. *Signal Oil and Gas Company v. Williams County*, 206 N.W.2d 75, 81 (N.D.1973). The only material restriction placed upon this legislative power is one of reasonableness. In order to constitute a valid classification for taxation, the subjects within the class must be segregated based upon a legitimate distinction in tax treatment. "A basis for classification must be such as naturally inheres in the subject matter." *Souris River Telephone Mutual Aid Corp. v. State*, 162 N.W.2d 685, 689 (N.D.1968). There must be some consideration given to differences in the type, character, or use of the property to justify disparate tax treatment. *Gamble-Robinson Fruit Co. v. Thoresen*, 53 N.D. 28, 204 N.W. 861, 864 (1925).

Ordinarily, a statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it. *State v. Gamble Skogmo, Inc.*, 144 N.W.2d 749, 758 (N.D.1966). To avoid a violation of the equal protection clause, the classification made by a challenged statute must bear some rational relationship to a conceivable legislative purpose, and the classification must apply uniformly to those similarly situated within the class. *Signal Oil and Gas Company v. Williams County, supra*, 206 N.W.2d at 81; *Ferch v. Housing Authority*

---

**5.** "Uniformity of taxation" means taxation which acts alike on all persons similarly situated. *State ex rel. Hammermill Paper Co. v. La Plante*, 58 Wis.2d 32, 205 N.W.2d 784, 806 (1973).

**6.** Section 57–02–11(1), NDCC, provides that all real property subject to taxation shall be listed and assessed every odd-numbered year with reference to its value, on February first of that year, and shall not be reassessed in the following year, except by order of the board of county commissioners or tax commissioner. Under § 57-02 11(4), NDCC, the governing body of any city may, by resolution, provide that all real property within the city shall be assessed annually with reference to its value on February first of each year. In a resolution passed on December 20, 1971, the City of Grand Forks elected to assess property on an annual basis.

*of Cass County*, 79 N.D. 764, 59 N.W.2d 849, 864 (1953). Although there is nothing in the Fourteenth Amendment which requires tax burdens to be just or equal in all respects, the aim of taxation should be to produce, as nearly as possible, equality in the burdens imposed. This does not require the adoption of an iron rule of equal taxation nor does it prevent legislative discretion in the selection of subjects for classification. *Signal Oil and Gas Company v. Williams County, supra*, 206 N.W.2d at 81, 82. Generally, every presumption is applied in favor of upholding laws which deal with regulation of the economy, the public health, or the collection and disbursement of taxes. *Romero v. Hodgson*, 319 F.Supp. 1201, 1202 (N.D.Cal.1970), *affirmed*, 403 U.S. 901, 91 S.Ct. 2215, 29 L.Ed.2d 678 (1971).

In the context of these constitutional principles, in *Elwell v. County of Hennepin*, 301 Minn. 63, 221 N.W.2d 538 (1974), the Minnesota Supreme Court upheld that state's "green acres statute," which is similar to the 1973 amendment to § 57-02 27, NDCC. The primary issue in that case was whether the agricultural classification was unconstitutional as an exemption from taxation and whether the statute violated equal protection under the Minnesota and the United States Constitutions. The Minnesota court concluded that its statutory agricultural classification was reasonable:

> "Far from being violative of equality, uniformity, and fairness, this classification allows agricultural property in urban areas to be valued using the same standards as similar property located in predominantly rural areas." *Elwell v. County of Hennepin*, 221 N.W.2d at 546, *supra*.

In *Boyne v. State*, 80 Nev. 160, 390 P.2d 225 (1964), the Nevada Supreme Court invalidated that state's green acres statute on the ground that it unfairly discriminated in favor of owners of agricultural property within the limits of a municipality. In support of this conclusion, the Nevada court reasoned:

> "While there may be some valid reasons advanced which would justify preferential treatment to a rancher, such reasons are fast dissolving into the realm of speculation where the impact of an urban explosion has engulfed the one time agricultural operation, which inevitably must give way to urban encroachment. In this connection one of the possible but unmentioned reasons assigned to this preferential treatment, to-wit: that the rancher, against his will, must sell to pay the cost of mounting taxes is not necessarily true because I should like to point out that urban encroachments, in many instances, have increased property valuations to the selling owner's advantage." *Boyne v. State, supra*, 390 P.2d at 228.

We do not find the Nevada court's reasoning in *Boyne* persuasive. Merely because a statute may provide preferential treatment to a class incidental to the main purpose of the legislation does not, alone, provide a justification for invalidating any of its provisions.

Both parties to this action agree that § 57-02 27 and, particularly, the annexation statutes, Ch. 40-51.2, NDCC, were amended to facilitate the annexation of agricultural lands to the cities by fostering creation of functional municipal master plans and by preventing gerrymandered urban growth. A review of the legislative history surrounding the passage of Ch. 337, North Dakota Session Laws, 1973, discloses that the Legislature was concerned with the difficulties confronted by a city when attempting to annex large parcels of farmland for purposes of city planning. It was often difficult for a city to annex agricultural land over the objection of reluctant farm owners who faced the possibility of increased assessments although their property's use remained the same.[7]

---

**7.** Chapter 40–51.2, NDCC, provides methods for either "voluntary" or "involuntary" annexation by cities. Under § 40–51.2–03, NDCC, the city may annex land upon the written petition of three-fourths of the electors or property owners in an adjacent territory to a city. This method provides for voluntary annexation. A municipality may, also, under § 40–51.2–07, NDCC, initiate proceedings to annex adjoining land. In the absence of protests filed by more

The Legislature has apparently decided that when the market value of a specific parcel of annexed agricultural land increases because of a change in its potential "highest and best use," the increase in assessment is a burden to the owner warranting a more lenient tax treatment of the property.

■■ In the area of taxation, the Legislature is invested with broad discretion to classify property into different categories of types and uses. Some of these categories include commercial, residential, and tax-exempt property. The Legislature has authority to allocate reasonable fiscal burdens to each class based upon a class's perceived ability to contribute. Whether or not the agricultural classification that we are asked to review in this case is a wise one is not for us to decide. Section 57 02 27, as amended, has a valid legislative purpose. We conclude that § 57 02 27 does not offend considerations of equal protection and is, therefore, constitutional under the North Dakota Constitution and the Fourteenth Amendment to the United States Constitution.

### III.

The City and County further assert that § 57–02–27, NDCC, as amended, violates § 179 of the North Dakota Constitution, which provides that:

"All taxable property except as hereinafter in this section provided, shall be assessed in the county, city, township, village or district in which it is situated, in the manner prescribed by law . . .";

The City and County argue that § 57 02 27 removes the power of assessment from local city assessors by requiring a uniform assessment based upon the value fixed by adjoining townships on agricultural land. We disagree.

A legislative enactment is conclusively presumed to be constitutional unless it is clearly shown that the act contravenes the state or federal constitution. *Souris River Telephone Mutual Aid Corp. v. State*, 162 N.W.2d at 688, *supra*.

In *Montana-Dakota Power Co. v. Weeks*, 8 F.Supp. 935 (D.N.D.1934), the United States District Court provided the following definition of the word "assess":

"The word 'assess' has a well-defined meaning when used in connection with the taxation of property. It means to make a valuation and appraisal of property, usually in connection with a listing of property liable to taxation. . . . The word 'assess' implies the exercise of discretion on the part of officials charged with the duty of assessing, including the listing or inventorying of the property involved, the determination of the extent of the physical property, and the placing of a value thereon."

■■ Section 179 of the North Dakota Constitution requires localized assessment "in the manner prescribed by law." This provision invests the Legislature with broad authority to enact statutes affecting the manner in which local property is to be valued. Under § 57 02 27, the actual assessment of agricultural property located within the city remains with the municipality, subject to a valid restriction by the Legislature that the assessment must be uniform with unannexed agricultural property. Any inconvenience incurred by a city in implementing the requirements of § 57–02 27 does not provide a justification for invalidating its provisions. We conclude, therefore, that § 57 02 27, NDCC, complies with § 179 of the North Dakota Constitution.

In conclusion, we hold that § 57–02–27, NDCC, does not violate equal protection and is to be applied to all agricultural lands

than one-fourth of the landowners in the area to be annexed, the area will become part of the municipality. If, however, at least one-fourth of the owners in the area proposed to be an-

nexed protest, the city may seek annexation by petition to the Annexation Review Commission as provided in § 40-51.2-08, NDCC, et seq.

within the limits of a city, regardless of the date of annexation. We further hold that § 57 02 ·27, NDCC, does not violate the provisions of § 179 of the North Dakota Constitution. The decision of the district court is affirmed.

ERICKSTAD, C. J., SAND, PAULSON, JJ., and BEEDE, District Judge, concur.

BEEDE, District Judge, sitting in place of VANDE WALLE, J., disqualified.