GOVERNOR ROBERT LIST; NEVADA TAX COMMIS-
SION, ROY E. NICKSON, Executive Director of the
Department of Taxation, State of Nevada and Legis-
lative Commission of the State of Nevada, Appel-
lants, v. T. L. WHISLER, Maj. USMC, Retired, KATE
A. WHISLER, SHANNON E. WARREN, GEORGE
WARD, WILLIAM TURNER, GEORGE TURNER,
RICHARD TRAVIS, ROSEMARY SMITH, JACK
SCOLLIN, ALPHONSO ROVERO, SEYMORE RAM-
BERG, DOTTIE RAMBERG, HANK PESNER, SAM
PATERNOSTOS, R. G. PARK, PAUL OSBORNE,
MARLYS OSBORNE, GREGORY MILLSPAUGH,
TOM MILK, ELAINE MENDONCA, JAMES B.
McMILLIAN, WILLIAM McGARRY, DELORES
McGARRY, WADE McLAUGHLIN, PATRICIA
McLAUGHLIN, FRANK McFADEN, JANET Mac-
EACHERN, GEORGE ANGUS MacEACHERN,
GEORGE MARSHALL, DARRELL LUCE, SY
LEWELLYN, EDNA KRAMER, ARDIS KEARNS,
FRIEDA KARSH, ANDREW JERRY, WILLIAM H.
HEINRICH, CLAIR HAYCOCK, CHIC HECHT,
RUTH HAZARD, DICK GRUBB, STUART GRIFFIN,
Sr., DAVID L. GOODNO, BEVERLY A. GOODNO,
IVAN GILLETT, PEGGY ANN FORD, NORMA
CURTIN, ROBERT CRADDOCK, JOHN N. CATHA,
ERNEST A. BECKER, Sr., LUANN BECKER, GER-
ALD ALTON, JEAN DUTTON, Clark County
Assessor, Clark County Nevada, WILLIAM GAL-
LOWAY, Clark County Treasurer, Clark County,
Nevada, Respondents.

No. 14440

March 4, 1983                    660 P.2d 104

[Rehearing denied June 10, 1983]

*Brian McKay,* Attorney General, and *Frank Daykin,* Legislative Counsel, Carson City, for Appellants.

*Robert Miller,* District Attorney, *Bill Curran,* County Counsel, and *James M. Bartley,* Chief Civil Deputy, Clark County; and *John P. Foley,* Las Vegas, for Respondents.

## OPINION

By the Court, GUNDERSON, J.:

This appeal arises out of a taxpayers' suit challenging certain 1981 amendments to Nevada tax statutes as violative of the

Nevada and United States Constitutions. In our view, such challenge lacks merit. The relevant background follows.

In 1981, the Nevada Legislature undertook a comprehensive revision of the state's tax structure. The primary components of this effort were contained in Assembly Bill 369, Chapter 149, 1981 Statutes of Nevada 285; Senate Bill 69, Chapter 427, 1981 Statutes of Nevada 786; and Senate Bill 411, Chapter 150, 1981 Statutes of Nevada 305.[1] These three pieces of legislation, constituting the 1981 "tax package," were intended, *inter alia,* to provide property tax relief to homeowners by limiting the revenues which local government might generate through property taxes. Increases in the state retail sales tax were expected to offset any loss of revenues occasioned by the limitation on property taxes.

As part of the 1981 tax package, the Legislature undertook to revise the statutory method theretofore utilized in the valuation of property. Under the statutory procedure previously established, assessment was based on the "full cash value" of property. *See* 1977 Nev. Stat. 1318 (NRS 361.227). This "full cash value" had in turn been determined by resort to a series of considerations, which were given such weight as the assessor deemed appropriate. These considerations included the value of the vacant land plus the cost of improvements minus any depreciation, the market value of the property as evidenced by certain other considerations, and the value of the property estimated by capitalization of the fair economic income expectancy. As a practical matter, however, the exigencies of assessment resulted in residential property usually being appraised on the basis of its market value as determined on the basis of comparable sales. In contrast, commercial and other property was usually appraised on the basis of cost less depreciation, or on its production of income.

It seems the Legislature, having determined that existing methods of assessment and valuation had occasioned an inequitable disparity in the tax burdens imposed on property, decided as part of the 1981 tax package to replace the existing valuation system with a system based largely on the costs of improvements less applicable depreciation. *See* NRS 361.227 (effective July 1, 1983). The Legislature apparently concluded that the use of this new method of valuation would help eliminate many of the inequities generated under the old system.

There remained the problem, however, of adjusting current assessed valuations to conform to the valuations which would go into effect under the new system. Property in Nevada must

---

[1]Hereinafter, this legislation will be referred to respectively as A.B. 369, S.B. 69 and S.B. 411.

be physically reappraised at least once every five years; in order to make most effective use of money and manpower, many assessors in Nevada utilize a "cyclical" or continuous reappraisal scheme whereby approximately one-fifth of a jurisdiction's taxable property is reappraised each year. *See* NRS 361.260; Recanzone v. Nevada Tax Commission, 92 Nev. 302, 550 P.2d 401 (1976). Due to the widespread use of cyclical reappraisals, when the Legislature amended the valuation system in 1981 a significant percentage of property in Nevada was being taxed on the basis of valuations made as early as 1976. Further, under the cyclical reappraisal system, property valued under the prior system would not be reappraised until it came up for the routine five-year reappraisal. This meant that property last appraised in 1981 would not come under the new system until its reappraisal in 1986.

In order to avoid a perceived injustice which would result if some property owners were forced to pay inequitable taxes for the five-year period required for the normal cyclical reappraisal, the 1981 tax package contained a mechanism for adjusting valuations appraised under the prior system. This "factoring system," contained in Section 31 of S.B. 69, provided:

SEC. 31. 1. Notwithstanding the provisions of NRS 361.225, except as provided in section 32 of this act, all property subject to taxation must be assessed at 35 percent of its adjusted cash value. The adjusted cash value is calculated by multiplying the full cash value of the property by the factor shown in the following table for the class for the fiscal year in which the property was most recently appraised:

| Year of Appraisal | Factor for Residential Improvements | Factor for Other Property |
|---|---|---|
| 1976-1977 or earlier | 1.416 | 1.438 |
| 1977-1978 | 1.190 | 1.313 |
| 1978-1979 | 1.000 | 1.199 |
| 1979-1980 | 0.840 | 1.095 |
| 1980-1981 | 0.706 | 1.000 |

2. The assessment provided in subsection 1 must be used only for the levying of taxes to be collected during the fiscal year 1981-1982 on all property to which they apply.

3. As used in this section, "residential improvement" means a single-family dwelling, a townhouse or a condominium, and its appurtenances.

As delineated in Section 31, property is to be assessed at 35 percent of its "adjusted cash value." In turn, this "adjusted

cash value" is to be calculated by multiplying the "full cash value" of the property in question by a "factor" established by the Legislature. As conceived by the Legislature, it seems these factors are weighted so that the valuations of property made earlier in the reappraisal cycle will be adjusted to bring them into parity with the valuation of property assessed more recently. The value given the factor applicable to any given year evidently reflects the Legislature's considered analysis of the economic dislocations and disparate valuations which had occurred during the early part of the current assessment cycle.

There are, however, two separate sets of weighted factors: one set for residential improvements, and a second set for other property. Further, it is clear that for any given year of appraisal the factors to be applied to residential improvements are less than the factors applicable to other property. It necessarily follows that for any given year of appraisal, residential improvements of a given "full cash value" will have a lower "adjusted cash value," and be subject to less tax liability, than other property of the same "full cash value."

It is this differentiation in the factoring system which is at issue in the instant appeal. Respondent taxpayers sought declaratory relief alleging, *inter alia,* that Section 31 violated the "uniform and equal" rate of assessment and taxation mandated by Article 10, Section 1 of the Nevada Constitution. After a trial, during which considerable testimony was adduced as to the Legislature's intent in enacting the tax package, and concerning the projected effects of the legislation, the district court determined that Section 31 violated Article 10, Section 1.[2] In so doing, we have concluded, the court erred.

Our analysis of Section 31 begins with the presumption of constitutional validity which clothes statutes enacted by the Legislature. Viale v. Foley, 76 Nev. 149, 152, 350 P.2d 721 (1960). All acts passed by the Legislature are presumed to be valid until the contrary is clearly established. Hard v. Depaoli et al., 56 Nev. 19, 26, 41 P.2d 1054 (1935). In case of doubt, every possible presumption will be made in favor of the constitutionality of a statute, and courts will interfere only when the Constitution is clearly violated. City of Reno v. County of Washoe, 94 Nev. 327, 333-334, 580 P.2d 460 (1978); Mengelkamp v. List, 88 Nev. 542, 545, 501 P.2d 1032 (1972); State of

---

[2]The district court also determined that the unconstitutional provisions of Section 31 could not be severed from the remainder of the 1981 tax package, and that therefore the entire tax package must be stricken as unconstitutional. Upon motion of appellants, the judgment of the court was stayed pending this appeal.

Nevada v. Irwin, 5 Nev. 111 (1869). Further, the presumption of constitutional validity places upon those attacking a statute the burden of making a clear showing that the statute is unconstitutional. Ottenheimer v. Real Estate Division, 97 Nev. 314, 315-316, 629 P.2d 1203 (1981); Damus v. County of Clark, 93 Nev. 512, 516, 569 P.2d 933 (1977); Koscot Interplanetary, Inc. v. Draney, 90 Nev. 450, 456, 530 P.2d 108 (1974).

The district court concluded the factoring system set forth in Section 31 violated Article 10, Section 1 of the Nevada Constitution. Article 10, Section 1 provides in pertinent part: "The legislature shall provide by law for *a uniform and equal rate of assessment and taxation,* and shall prescribe such regulations as shall secure a just valuation for taxation of all property, real, personal and possessory . . . ." (Emphasis added.) The import of this Uniform and Equal Clause has been discussed several times by this court. In the seminal case of State of Nevada v. Eastabrook, 3 Nev. 173 (1867), we analyzed Article 10, Section 1 and held:

> We have no hesitation in saying that the constitutional convention, in using the language last quoted, meant to provide for at least one thing in regard to taxation: that is, that all *ad valorem* taxes should be of a uniform rate or percentage. *That one species of taxable property should not pay a higher rate of taxes than other kinds of property.* If the language we have quoted did not express this idea, then it was perfectly meaningless.

3 Nev. at 177 (emphasis added). The interpretation of the Uniform and Equal Clause established in *Eastabrook* has been approved by this court many times. *See* United States v. State ex rel. Beko, 88 Nev. 76, 86-87, 493 P.2d 1324 (1972); Boyne v. State ex rel. Dickerson, 80 Nev. 160, 166, 390 P.2d 225 (1964); State of Nevada v. Kruttschnitt, 4 Nev. 178, 200 (1868). Further, other jurisdictions having occasion to address virtually identical constitutional provisions have reached similar results. *See* State ex rel. Stephan v. Martin, 608 P.2d 880, 886 (Kan. 1980); Wheeler v. Weightman, 149 P. 977 (Kan. 1915). Thus, faced with the weight of authority interpreting Article 10, Section 1, the question before this court is whether Section 31 requires one species of taxable property to pay a higher rate of taxes than other kinds of property.

In addressing this question, the crucial inquiry is the legislative intent and purpose for enacting Section 31. It is well-established that judicial construction of legislation should be

based on legislative intent, and legislative intent is to be determined by looking at the whole act, its object, scope and intent. If possible, legislative intent should be determined by looking at the act itself. Escalle v. Mark, 43 Nev. 172, 176, 183 P. 387 (1919); State v. Brodigan, 37 Nev. 245, 256, 141 P. 988 (1914) (Talbot, C. J., concurring); State v. Hamilton, 33 Nev. 418, 421-422, 111 P. 1026 (1910); In re Primary Ballots, 33 Nev. 125, 135, 126 P. 643 (1910); State of Nevada v. Toll-Road Co., 10 Nev. 155, 160 (1875).

In the instant case, the intent of the Legislature in enacting Section 31 is unequivocally expressed in S.B. 69. Section 33 of S.B. 69 provides:

> SEC. 33.   The legislature finds that:
>
> 1.   The factors prescribed in section 31 of this act for the respective years of appraisal *have the approximate effect of placing property appraised before the fiscal year 1980-1981 on a parity with property appraised during that fiscal year, and the respective classes of real property separately specified in that section on a parity with one another.*
>
> 2.   Such an approximation is necessary in order to permit the orderly collection of taxes ad valorem during the fiscal year 1981-1982.
>
> 3.   Each of the classes of property excluded from the operation of section 31 of this act is assessed pursuant to NRS in such a manner that no adjustment is required to place all property within that class on a parity.

(Emphasis added.) Accordingly, it seems the expressed intent of the Legislature in enacting Section 31 was not either to favor a particular class of property or to exempt a particular class of property partially from the legitimate burdens of taxation. Rather, the Legislature intended to correct a method of assessment and taxation which it perceived to be unjust and potentially unconstitutional. As previously noted, legislative hearings and debate on the 1981 tax package established that residential property was then usually appraised on the basis of comparable sales, while commercial property was appraised primarily on the basis of cost less depreciation or on the property's production of income. *See* 1977 Nev. Stat. 1318 (NRS 361.227). The Legislature came to the conclusion that, due to the economic forces at work over the years, this method of valuation and appraisal had placed an inordinate and undesirable burden on the residential property taxpayer. By the Legislature's own declaration, the factoring system contained in

Section 31 represents an attempt to rectify this situation and to achieve parity in valuation between residential improvements and other property. The question remains, however, whether the factoring system contained in S.B. 69 nonetheless violates the constitutional prohibition, as delineated in *Eastabrook,* that one species of taxable property not pay higher taxes than other kinds of property.

In this regard, we initially note that Section 31 does not expressly impose two different *rates* of taxation. Both residential improvements and other property are to be taxed at the same rate: 35 percent of "adjusted cash value." If the Legislature had flatly mandated that residential property be taxed at a lower rate than other property, and had provided no rationale for such a disparity of treatment, prior case authority might well compel the conclusion that such legislation was unconstitutional. For example, in Boyne v. State ex rel. Dickerson, 80 Nev. at 160, this court examined a statute which permitted the owner of land used exclusively for agricultural purposes to contract with the county assessor for assessment and payment of taxes based on the "full cash value" of the property for agricultural purposes, rather than on its value for other purposes. The avowed purpose of this statute was to shift or defer the burden of increased taxation on agricultural property caused by increased population pressures and the growth of urban areas. Nonetheless, we found the statute unconstitutional, because such a practice gave owners of agricultural property the very type of distinct tax advantage prohibited by Article 10, Section 1. Of like import is State ex rel. Stephan v. Martin, 608 P.2d at 880, which involved a flat, across-the-board reduction of 20 percent in the appraised value of farm machinery and equipment, in order to avoid a "severe economic crisis" confronting farmers and ranchers. This partial exemption was held to violate the Equal and Uniform Clause of the Kansas Constitution. In contrast, on its face, the instant legislation neither applies separate tax rates to different classes nor partially exempts a particular class of property from the legitimate burdens of taxation.

It is true that Section 31 temporarily establishes two separate sets of factors to be used in calculating the "adjusted cash value" on which tax liability is based. Furthermore, for any given year of assessment, the factor for residential improvements is significantly less than the corresponding factor for other property. Finally, as previously noted, for any given year, a residential improvement with a "full cash value" identical to a given piece of non-residential property will thus derive

a lower "adjusted cash value" than the non-residential property,· and will therefore obtain a reduced assessment. However, while the district court concluded this procedure resulted in a non-uniform and unequal method of assessment and taxation, we do not agree with this characterization.

To the contrary, given the existing disparities—caused by the prior use of cost minus depreciation or income production valuation for commercial property, as opposed to comparable sales valuation for residential property—it appears to us that the factoring system contained in Section 31 simply reflects the Legislature's considered judgment that residential improvements have been over-valued and commercial property under-valued during recent assessments. The factoring system contained in Section 31 thus appears to represent a mechanism by which previously faulty valuations will be adjusted, to the best of the Legislature's ability, thereby yielding the equal and uniform taxation required by our Constitution.

In reaching this conclusion, we find it significant that S.B. 69 limits the use of the factoring system to the brief transitional period required to "phase out" the valuations made under the prior system and "phase in" the new valuations made pursuant to the 1981 tax package. Effective July 1, 1983, all property subject to taxation must be assessed at 35 percent of its taxable value. *See* NRS 361.225. Further, effective July 1, 1983, taxable value of property is to be determined under the new method of valuation which emphasizes cost minus depreciation. *See* NRS 361.227. Finally, subsection 2 of Section 31 provides that the assessment made under the factoring system "must be used only for the levying of taxes to be collected during the fiscal year 1981-1982 on all property to which they apply." Thus, it does not appear that Section 31 violates the constitutional prohibition, as delineated in *Eastabrook,* against taxing different species of property at different rates. Instead, it appears that Section 31 provides a limited adjustment mechanism, by which prior inequitable valuations may be melded into the hopefully more uniform valuation and assessment procedures established under the 1981 tax package.

Accordingly, because the factoring system contained in Section 31 of S.B. 69 does not appear to offend the Equal and Uniform Clause contained in Article 10, Section 1 of the Nevada Constitution, we need not consider whether Section 31 would be severable from the remainder of the 1981 tax package. We note, however, that respondents have advanced a number of additional constitutional challenges to the 1981 tax package, contending that even if the district court erred in regard to Section 31, its judgment was nonetheless correct and

should be sustained. *See* Hotel Riviera, Inc. v. Torres, 97 Nev. 399, 632 P.2d 1155 (1981); Sievers v. County Treas., Douglas Co., 96 Nev. 819, 618 P.2d 1221 (1980) (a correct judgment should not be reversed simply because it is based on a wrong reason). We have therefore examined respondents' additional arguments, and have found them to be without merit.

Accordingly, the judgment of the district court is reversed.

MANOUKIAN, C. J., and SPRINGER, MOWBRAY, and STEFFEN, JJ., concur.