*837
 
 OPINION
 

 Per Curiam:
 

 Sun City Summerlin (Sun City) is a master-planned adult residential community in Las Vegas developed by Del Webb Communities, Inc. (Del Webb). Del Webb developed two golf courses and two recreation centers (the properties) as a part of Sun City and conveyed them to appellant Sun City Summerlin Community Association (the Association), a non-profit corporation. The Clark County Assessor’s Office (the county assessor) assessed real property taxes totaling $259,648.11 against the properties. The Association appealed the assessments to the Clark County Board of Equalization, which upheld the assessments. The Association appealed the decision to the State Board of Equalization (the State Board), which denied the appeal. The Association then petitioned for judicial review, and the district court denied the petition.
 

 We conclude that NRS 116.1105(2)(b) applies to this case but is unconstitutional insofar as it precludes taxation of common elements in a planned community. We further conclude that restrictions on the use of the properties are relevant to their valuation and that the county assessor erred in disregarding the restrictions in valuing the properties.
 

 FACTS
 

 The following facts were presented to the State Board. Sun City is a master-planned adult residential community in Las Vegas developed by Del Webb. Del Webb developed two golf courses and two recreation centers as a part of Sun City and conveyed them to the Association. Del Webb recoups the cost of developing these amenities through a higher sale price for homes in Sun City. Owners of residences in Sun City are Class A members of the Association and must pay an annual fee of $320.00 to the Association. Class A members who wish to play golf pay an additional annual fee of $600.00 and a fee of $4.00 per round of golf. Del Webb is a Class B member of the Association. The Association’s bylaws provide that its board of directors can sell Association property worth more than a specified value only with the assent of a majority of its members.
 

 The four properties were conveyed to the Association in 1990 and 1992 and are encumbered with certain use restrictions. All four deeds reserve for Del Webb, for a period of twenty years after conveyance, the right to prior approval of the design of any
 
 *838
 
 improvements to the properties. The golf course properties shall be used only as golf courses for a period of twenty years after conveyance. The Association asserts in its brief to this court that all four properties must be run as non-profit enterprises for the sole benefit of Sun City residents for twenty years. However, in the record before this court, only the deed for one recreation center states all these restrictions. Moreover, Jon Donnell, the treasurer for the Association and a vice president of Del Webb, informed the State Board that the Association supplements its income “by permitting some nonresident golf play [at] about $75 a round.” The Association gave evidence that the golf courses, pro shops, grill, snack bar, and recreation centers on the properties operate at an overall loss.
 

 The Association presented evidence that due to the amenities provided by the properties, homes in Sun City sell for higher prices than comparable homes elsewhere without such amenities and that Sun City homes were assessed $11.00 per square foot higher than comparable homes. According to the Association, this additional assessment amounted to $83,259,000.00 for all Sun City homes. The county assessor valued the four properties in question at a total of $21,657,281.00.
 

 Bill Chambers of the county assessor’s office stated that in addition to the golf courses and recreation areas, other factors accounted for the higher value of Sun City homes: Sun City is an affluent retirement community which has security, shopping centers, and nearby medical facilities. Chambers said that to help establish the taxable value of Sun City lots, the county assessor’s office had compared the cost of Sun City interior lots with those at a development across the street, Belair Estates. He also said that although Sun City homes were production and Belair Estates homes were semi-custom, the quality of construction was similar. According to Chambers, the county assessor had also compared golf course frontage lots at Sun City with those at Canyon Gate development and concluded that the valuation of Sun City was appropriate given these comparisons.
 

 Tim Greene stated for the Association that Sun City had public streets while Canyon Gate was a more exclusive community with security gates, yet comparable Sun City homes were still higher valued. Donnell, Del Webb vice president, stressed that the county assessor compared Sun City production homes with semi-custom and custom homes, not other production housing developments, which Donnell considered to be Sun City’s competition.
 

 A member of the State Board asked Chambers, “what if the developer had recorded his maps with an undivided interest in the common areas? How would you handle it then? It would be reflected in the price of the individual home, wouldn’t it?” Chambers answered: “Yes, it would be like a condo.”
 

 
 *839
 

 DISCUSSION
 

 Whether NRS 116.1105(2) applies to this case
 

 NRS 361.420(4)(b) provides that a property owner who has protested his or her property taxes and been denied relief by the State Board may sue in court on the ground that “the property is exempt from taxation under the provisions of the revenue or tax laws of the state.” NRS 116.1105(2) provides:
 

 In a condominium or planned community:
 

 (a) If there is any unit’s owner other than a declarant, each unit that has been created, together with its interest in the common elements, constitutes for all purposes a separate parcel of real estate.
 

 (b) If there is any unit’s owner other than a declarant, each unit must be separately taxed and assessed, and no separate tax or assessment may be rendered against any common elements for which a declarant has reserved no developmental rights.
 

 The Association contends that NRS 116.1105(2)(b) prohibits separate assessment and taxation of the properties. Respondent Department of Taxation (the Department) argues that this statute does not apply to this case.
 
 [1]
 

 Del Webb is the declarant here.
 
 See
 
 NRS 116.110335. The Department argues that as long as Del Webb owns any units at Sun City and is a member of the Association, NRS Chapter 116 is inapplicable. By its own language, however, NRS 116.1105(2)(b) applies “[i]f there is
 
 any
 
 unit’s owner other than a declarant.” (Emphasis added.) It does not require that all units have owners other than a declarant. The Department also asserts that because Del Webb intends to add additional land to Sun City and subdivide it, Del Webb has reserved developmental rights which place Sun City outside the purview of NRS 116.1105(2)(b).
 
 See
 
 NRS 116.11034.
 
 [2]
 
 However, NRS 116.1105(2)(b) provides that “no
 
 *840
 
 separate tax or assessment may be rendered against any
 
 common elements for which
 
 a declarant has reserved no developmental rights.” (Emphasis added.) Del Webb has not reserved developmental rights for the common elements in question here. It conveyed the properties to the Association and reserved no right to create units within the properties. Even if Del Webb can add land to Sun City and create additional units, these do not constitute developmental rights in the golf courses or recreation centers. Therefore, Del Webb’s remaining interests in Sun City do not preclude application of NRS 116.1105(2) to this case.
 
 [3]
 

 Whether NRS 116.1105(2)(b) is constitutional as applied to planned communities
 

 NRS 116.1105(2)(a) contemplates a situation where “each unit that has been created,
 
 together with its interest in the common elements,
 
 constitutes for all purposes a separate parcel of real estate.” (Emphasis added.) In such a situation, “each unit must be separately taxed and assessed, and no separate tax or assessment may be rendered against any common elements.” NRS 116.1105(2)(b). However, under the statutory scheme set forth in NRS Chapter 116, units in planned communities, unlike condominiums, include no taxable interest in common elements.
 

 The parties agree that Sun City is a “planned community.”
 
 See
 
 NRS 116.110368, 116.110323. Individual Sun City units do not include ownership interests in the golf courses and recreation centers; rather, the Association of Sun City unit owners owns these common elements. NRS 116.1105(2) expressly applies to both condominiums and planned communities. But these two types of common-interest community, by statutory definition, exhibit distinctly different ownership of common elements. In a condominium, “the undivided interests in the common elements are vested in the units’ owners.” NRS 116.110325. In a planned community, common elements are real estate, other than a unit, “owned or leased by the association.” NRS 116.110318(2). Thus, NRS 116.1105(2)(b) permits taxation of common elements in condominiums, where unit owners hold undivided interests in the elements, but not in planned communities such as Sun City, where associations own the elements, and the county assessor is precluded from taxing the common elements directly.
 

 The question before us is whether this disparate taxation of
 
 *841
 
 properties is constitutional. Statutes enacted by the Legislature carry a presumption of constitutional validity, and those attacking a statute must clearly show that it is unconstitutional. List v. Whisler, 99 Nev. 133, 137-38, 660 P.2d 104, 106 (1983).
 

 Article ten, section one of the Constitution of the State of Nevada requires the Legislature to “provide by law for a uniform and equal rate of assessment and taxation” and “prescribe such regulations as shall secure a just valuation for taxation of all property.” Early in its history, this court explained that this constitutional provision requires “that all
 
 ad valorem
 
 taxes should be of a uniform rate or percentage. That one species of taxable property should not pay a higher rate of taxes than other kinds of property.” State of Nevada v. Eastabrook, 3 Nev. 173, 177 (1867). The court concluded that a statute providing for a different tax rate for the products of mines was unconstitutional and void: “The legislature could neither make the tax greater nor less on the products of mines than on other property.”
 
 Id.
 
 at 179. This court has reaffirmed its holding in
 
 Eastabrook
 
 many times.
 
 See List,
 
 99 Nev. at 138, 660 P.2d at 107.
 

 In Boyne v. State ex rel. Dickerson, 80 Nev. 160, 390 P.2d 225 (1964), this court considered a statute which allowed assessment of land used for agricultural purposes based on its value for such use, rather than on its value for other purposes — the method for assessing other lands. This court affirmed the district court’s conclusion that the statute was unconstitutional because it gave the owners of agricultural property a distinct tax advantage over other landowners.
 
 Id.
 
 at 166-67, 390 P.2d at 228-29.
 

 Insofar as NRS 116.1105(2)(b) precludes taxation of common elements in planned communities, we conclude that it is void for violating the prescription “for a uniform and equal rate of assessment and taxation” of all property set forth in article ten, section one of our state constitution.
 

 Other issues regarding the assessment and taxation of the properties
 

 The Association offers other reasons, in addition to NRS 116.1105(2)(b), for assessing no taxes against the properties. It argues that the tax assessment was improper because the deed restrictions limit the properties’ marketability and largely eliminate their value. It also argues that because the properties enhance the value of and increase the taxes on Sun City units and because unit owners hold easements in the properties, taxation of both the properties and the units amounts to unconstitutional double taxation.
 

 NRS 361.420(4) (e) provides that a person assessed may sue on
 
 *842
 
 the ground that “the assessment is out of proportion to and above the taxable cash value of the property assessed.” The plaintiff has the burden of proof “to show by clear and satisfactory evidence that any valuation established by . . . the county assessor ... is unjust and inequitable.” NRS 361.430. A plaintiff can satisfy this burden by showing that the assessor applied a fundamentally wrong principle or refused to exercise his or her best judgment or that the assessment is so excessive as to imply fraud and bad faith. Imperial Palace v. State, Dep’t Taxation, 108 Nev. 1060, 1066, 843 P.2d 813, 817 (1992).
 

 Both parties have cited a number of cases regarding the effect of zoning and deed restrictions on the value of land.
 
 See, e.g.,
 
 Recreation Centers v. Maricopa County, 782 P.2d 1174, 1176 (Ariz. 1989); Lake County Bd. v. Property Tax Appeal Bd., 414 N.E.2d 173 (Ill. App. Ct. 1980); Supervisor of Assessments v. Bay Ridge Prop., Inc., 310 A.2d 773 (Md. 1973); Dept. of Revenue v. Grouse Mt. Development, 707 P.2d 1113 (Mont. 1985); Locke Lake Colony v. Town of Barnstead, 489 A.2d 120 (N.H. 1985); Grasser v. Graham, 411 N.Y.S.2d 836 (Sup. Ct. 1978); Brooks Resources Corp. v. Dept. of Revenue, 595 P.2d 1358 (Or. 1979); Tualatin Development Co. v. Department of Revenue, 473 P.2d 600 (Or. 1970); Lake Monticello Owners’ Ass’n v. Ritter, 327 S.E.2d 117, 119 (Va. 1985); Sahalee Country Club v. Bd. of Tax App., 735 P.2d 1320 (Wash. 1987); Twin Lakes Golf and Country Club v. King County, 548 P.2d 538 (Wash. 1976). We distill from these cases the proposition that restrictions on the use and alienability of land are relevant to valuation of land and in some circumstances may be extreme enough to render the land valueless for tax purposes. We conclude that the restrictions in the instant case are not that extreme. Even assuming that all four properties must be run as non-profit enterprises for the sole benefit of Sun City residents for twenty years, they appear to retain some taxable value. The Association has the power to sell the properties in question if a majority of its members assent. Someone might be willing to buy the properties since there is no restriction on their use after the twenty-year period expires. Under the approach taken by the Arizona Supreme Court in
 
 Recreation Centers,
 
 even a non-profit restriction on a property’s use is irrelevant to its valuation for tax purposes.
 
 Recreation Centers,
 
 782 P.2d at 1181-83. Furthermore, the Association did not show that the golf courses or other facilities could not be run at a profit in the future.
 
 See Brooks,
 
 595 P.2d at 1360 (taxpayer failed to show unprofitable golf course had no value when losses were decreasing and taxpayer offered no expert testimony that course would continue to be unprofitable) .
 

 
 *843
 
 In regard to the issue of double taxation, the correct view is that there is no necessary correlation between one property’s increase in value and another property’s decrease in value. Homes located near a golf course can enjoy enhanced value from that proximity without impairing the value of the golf course itself. Certainly, a separately owned, for-profit golf course which enhances the value of surrounding homes could not avoid taxes simply because it has increased the value of and the taxes paid on those homes. Therefore, the focus should be simply on the subject property’s value, and neighboring property values are relevant only insofar as they affect the subject property’s value.
 
 See Sahalee,
 
 735 P.2d at 1323-24;
 
 Lake County,
 
 414 N.E.2d at 176;
 
 cf. Lake Monticello,
 
 327 S.E.2d at 119.
 

 The Association contends that taxation of the properties constitutes double taxation for other reasons. The Association argues that because its members are automatically and mandatorily made members of the Association, and the Association owns the common elements, that such membership constitutes an ownership interest in the common elements. It also claims that Sun City residents have an ownership interest in the properties pursuant to NRS 116.2116(2), which provides that in a planned community,
 

 the units’ owners have an easement:
 

 (a) In the common elements for purposes of access to their units; and
 

 (b) To use the common elements and all real estate that must become common elements ... for all other purposes.
 

 This contention has no merit. The Association offers no authority for the proposition that membership in the Association or easements for access to and use of property constitute ownership of that property, nor does it explain how this proposition is to be reconciled with NRS 116.110318(2), which states that common elements in a planned community are “owned or leased by the association.”
 
 [4]
 

 As discussed above, however, these easements are relevant to accurate valuation of the properties. Although the restrictions imposed on the properties do not render them valueless, the restrictions are relevant to valuation of the properties. The record indicates that the county assessor did not consider the restrictions in making its valuations, and the Department argues that under
 
 *844
 
 NRS 361.227(1)(a)(2) the assessor need not and should not consider such restrictions in valuing improved land. We reject this argument.
 

 NRS 361.227(1)(a)(1) expressly provides that vacant land be appraised by considering
 
 inter alia
 
 “any legal . . . restrictions” upon the land’s uses, while NRS 361.227(1)(a)(2) does not expressly provide that legal restrictions be considered in appraising improved land. The Department seems to argue that since subsection (1)(a)(2) does not mention legal restrictions upon use, such restrictions are irrelevant in regard to improved land. This view does not make sense. NRS 361.227(1)(a)(2) provides that improved land be appraised “consistently with the use to which the improvements are being put.” We conclude that restrictions on use are an integral aspect of the use to which improved land is put and are necessarily relevant to any valuation of the land. Therefore, we conclude that the county assessor applied a fundamentally wrong principle in disregarding the use restrictions in valuing the properties.
 

 CONCLUSION
 

 NRS 116.1105(2)(b) is unconstitutional and void insofar as it precludes the taxation of common elements in a planned community. Consideration of the restrictions which the properties are subject to is necessary for accurate valuation of the properties. We therefore reverse the district court’s order and remand this case to that court for further proceedings consistent with this opinion.
 
 [5]
 

 [1]
 

 The Department also contends that even if the statute applies, it simply provides a “billing mechanism” that does not preclude taxing the properties but only requires billing the individual homeowners for the taxes rather than the Association. We reject this contention because we do not see how NRS 116.1105(2)(b) can preclude “separate tax or assessment” against common elements and yet allow billing of unit owners for taxes on the common elements.
 

 [2]
 

 NRS 116.11034 provides that developmental rights are rights to:
 

 1. Add real estate to a common-interest community;
 

 2. Create units, common elements or limited common elements within a common-interest community;
 

 3. Subdivide units or convert units into common elements; or
 

 4. Withdraw real estate from a common-interest community.
 

 [3]
 

 Even if Del Web held developmental rights in the common elements, the State would then be required to assess taxes against Del Webb, not the Association. NRS 116.1105(3).
 

 [4]
 

 Even if we were to agree that membership in the Association constituted an ownership interest in the common elements, it is clear from the double taxation discussion,
 
 supra,
 
 that such an interest was not taxed through the higher value of the homes.
 

 [5]
 

 The Honorable A. William Maupin, Justice, did not participate in the decision of this matter.